CYNTHIA JOHNSON et al., Respondents, v JAMAICA HOSPI-
TAL, Appellant.

Second Department, October 17, 1983

APPEARANCES OF COUNSEL

*Howard S. Davis* (*Barry M. Hoffman* of counsel), for
appellant.

*Jacob Firester* for respondents.

#### OPINION OF THE COURT

BOYERS, J.

In their complaint, plaintiffs seek money damages for
severe emotional anguish suffered as a result of the disap-
pearance of their nine-day-old daughter from the defen-
dant hospital's nursery, an event allegedly occasioned by
the hospital's negligence in its care and custody of their
infant.

Following her birth on June 8, 1981, plaintiffs' infant
daughter, Kawana, remained in the care and custody of the
defendant hospital for further treatment after her mother's
discharge from that institution on or about June 15, 1981.

When the mother visited the hospital nursery ward on
June 16, 1981, a day on which the institution had received
two telephone bomb threats, she found that her nine-day-
old infant was missing. Kawana had been kidnapped by an

unrelated third party; she was recovered by the police department approximately four and one-half months later.

In their complaint, as amplified by a bill of particulars interposed prior to the time Kawana was recovered, plaintiffs allege two causes of action. First, they seek to recover money damages, *inter alia,* for the "grief, mental torment pain and anguish" they suffered, and for the plaintiff mother's neurological and psychological injuries sustained as a consequence of their daughter's disappearance, which, it is alleged, was the result of the negligence of the defendant hospital, and those in its employ. Their second cause of action is based upon the legal doctrine of *res ipsa loquitur.* Justice KUNZEMAN at Special Term denied defendant hospital's motion to dismiss the complaint for failure to state a cause of action. Circumscribing our decision within the narrow factual parameters delineated in the complaint, we hold that the plaintiffs have stated cognizable causes of action and therefore affirm.

Given the present posture of this case, we accept, as we must, the plaintiffs' contentions as true (*Becker v Schwartz,* 46 NY2d 401, 408; *Howard v Lecher,* 42 NY2d 109, 112; *Cohn v Lionel Corp.,* 21 NY2d 559, 560). Thus, we are required only to determine whether the plaintiffs state valid causes of action and need not reach the merits of their complaint.

We cannot agree with the distinguished dissenters that this case is analogous to those held to be within the so-called "bystander rule", and that therefore, plaintiffs have no legal recourse for the psychic injuries complained of. Admittedly, in all negligence cases, liability is predicated upon the breach of a duty, which legal obligation is circumscribed by considerations not only of logic but also of policy (see *De Angelis v Lutheran Med. Center,* 58 NY2d 1053). Clearly, under the unique facts of this action, the defendant hospital, standing as it were *in loco parentis,* owed a direct duty to the plaintiffs to care for and protect their infant daughter whom they had left in its custody, and plaintiffs, as "direct victims" (see 25 ATLA L Rep 442) of the breach complained of, are possessed of a cognizable cause of action for their psychic injuries (cf. *Kennedy v McKesson Co.,* 58 NY2d 500). Such a claim constitutes an

exception to the general rule precluding recovery for negligently caused psychological trauma with ensuing emotional, rather than physical, consequences, because there exists, *inter alia,* "an especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious" (Prosser, Torts [4th ed], § 54, p 330; see *Johnson v State of New York,* 37 NY2d 378; cf. *Molien v Kaiser Foundation Hosps.,* 27 Cal 3d 916).

In *Johnson v State of New York (supra,* p 383), the Court of Appeals noted that a claim for emotional harm caused by a tortious act cannot stand absent the existence of a duty flowing directly from the negligent party to the injured party. This rule, that "no cause of action lies for unintended harm sustained by one, solely as a result of injuries inflicted directly upon another, regardless of the relationship and whether [or not] the one was an eyewitness to the incident" (*Tobin v Grossman,* 24 NY2d 609, 611), is based in part upon policy factors, one of which is the fear of infinite liability (*Tobin v Grossman, supra,* pp 616, 618).

In *Tobin (supra,* p 611), the plaintiff mother sought to recover for the emotional injuries she sustained as a result of shock and fear for her child occasioned by an accident which occurred within her hearing and her subsequent observation of the injured child. As the court observed, even "the eyewitness limitation provides no rational practical boundary for liability" for "whichever way one turns in permitting a theory of recovery one is entangled in the inevitable ramifications which will not stay defined or limited. There are too many factors and each too relative to permit creation of only a limited scope of liability or duty" (*Tobin v Grossman, supra,* pp 618-619). Thus, the New York rule precludes "bystanders" from recovering for the negligent infliction of emotional harm.

Contrary to the view of the dissenters, the dangers stressed by the *Tobin* court are conspicuously absent at bar and the facts are not analogous to that case. *Tobin* dealt with the general duty which we all have to refrain from negligently harming another. However, the duty at bar specifically flowed from the hospital to the plaintiff parents, who were the "direct victims" of the breach thereof

(see, e.g., *Johnson v State of New York, supra;* cf. *Holland v St. Paul Mercury Ins. Co.,* 135 So 2d 145 [La]).* Such duty arose as a result of the defendant hospital's continued custody of the infant for further treatment (cf. *Rainnie v Community Mem. Hosp.,* 87 AD2d 707). Surely, the situation at bar is not one in which the parents were required to disregard the hospital's request that their newborn remain for further treatment. Rather, because of their natural care and concern for Kawana, they consented to her remaining in the defendant's nursery ward until such time as they were advised that their daughter was sufficiently well to be discharged.

It is evident that the risk of harm resulting from the hospital's alleged negligent management of its nursery ward, which facilitated the kidnapping of the infant, was, in light of the parent-child relationship and the direct and certain emotional impact of such event, reasonably foreseeable to the defendant hospital whose allegedly tortious conduct may be considered to have proximately caused the injuries complained of (see *Becker v Schwartz, supra,* p 410). While the court in *Tobin* (*supra,* p 616) expressed the fear that permitting recovery by the parent in that case would escalate into the extension of recovery under similar circumstances by siblings, grandparents and others related to the injured child, such fear is untenable in the instant case, which is specifically limited upon its special facts and circumstances to the plaintiff parents who left their newborn in defendant hospital's care. Thus, there is no need to establish arbitrary boundaries for liability. Our decision does not extend to other relatives and friends emotionally affected by news of the child's disappearance. Likewise, our holding today is not intended to become a vehicle for litigation flowing from intrafamily disputes whereby, for example, a parent, in the throes of a custody battle, seeks damages from an educational institution for emotional injuries suffered when a child is taken from school grounds allegedly at the behest of the other parent. Where conduct

---

* In *Holland v St. Paul Mercury Ins. Co.* (135 So 2d 145, 157-158) the Louisiana Court of Appeal upheld a claim by the parents based on emotional injuries suffered as a result of the fear sustained when their son ingested rat poison which had been placed in their home by the defendant. The court found a direct duty running from the defendant to the parents based on a legal responsibility to properly identify the poison in order that the child could be treated properly.

is intentional, tort remedies, such as actions to recover damages instituted against an abductor (see *Pickle v Page,* 252 NY 474), or for wrongful interference with custodial relations (see *Lisker v City of New York,* 72 Misc 2d 85) are sufficient.

While it is true that the law cannot provide redress for every injury (*Howard v Lecher, supra,* p 111), as Dean Prosser has noted, where a direct duty has been breached and where "the mental distress is undoubtedly real and serious, there is no essential reason to deny recovery" (Prosser, Torts [4th ed], § 54, p 330). Moreover, it is apparent that this rationale was the common denominator in those cases which marked exceptions from the general rule denying recovery for the negligent infliction of emotional harm absent physical injury (Prosser, Torts [4th ed], § 54, p 330; see *Kennedy v McKesson Co.,* 58 NY2d 500, 504-505, *supra*). Interestingly, one class of such particular cases permits recovery by survivors for emotional harm sustained as a result of a hospital's mishandling of a dead body (see *Darcy v Presbyterian Hosp.,* 202 NY 259), or the misinformation negligently given to a daughter that her mother had died (see *Johnson v State of New York, supra*). It would indeed be anomalous to permit recovery for emotional harm where a corpse is misplaced or mishandled by a hospital, or where such institution negligently informs a relative of the death of its patient, yet not allow recovery from an institution for its negligence in relation to a live infant whose parents were constrained to leave it there for observation and medical treatment. Indeed, it would appear that had the hospital negligently informed plaintiffs that their child had died or been abducted from the premises when, in fact, this was not so, plaintiffs would possess a cause of action under the principles enunciated in *Johnson (supra)*; to not recognize an action cognizable at law where plaintiffs' infant was actually taken would fashion an illogical result which the law cannot sanction.

The contention that the valid claim at bar should be denied on the basis of public policy considerations is unacceptable. As our Court of Appeals has observed in *Battalla v State of New York* (10 NY2d 237, 240-241): "[E]ven the public policy argument is subject to challenge. Although

fraud, extra litigation and a measure of speculation are, of course, possibilities, it is no reason for a court to eschew a measure of its jurisdiction. 'The argument from mere expediency cannot commend itself to a Court of justice, resulting in the denial of a logical legal right and remedy in *all* cases because in *some* a fictitious injury may be urged as a real one' ". Where circumstances such as those herein exist, public policy considerations inure to plaintiffs' benefit, for indeed, little likelihood of either a proliferation of similar claims or a plethora of fraudulent allegations exists. There is unquestionably no doubt as to the genuineness of plaintiffs' claim (see *Johnson v State of New York, supra,* pp 382, 384). One would indeed be hard pressed to argue that even the most emotionally stable of parents would suffer no mental anguish when their newborn baby is kidnapped — any other reaction would seem irrational and totally unnatural (*Becker v Schwartz,* 46 NY2d 401, 414, *supra*). As the court in *Becker* (*supra,* p 414) observed with regard to the reaction of the plaintiff in *Johnson* (*supra*), "[t]hat a daughter might receive such notice with mixed emotions lacks any rational basis in human experience". Likewise, in the instant case, there exists a real and substantial likelihood of emotional injury to the plaintiffs and "not only justice but logic compels" that their complaint stand (*Johnson v State of New York, supra,* p 383).

Accordingly, for the reasons stated, Special Term's order denying defendant's motion to dismiss the complaint should be affirmed.

BRACKEN, J. (dissenting). I dissent and vote to reverse the order of Special Term and grant the defendant's motion to dismiss the complaint for failure to state a cause of action.

In this action, the parents of an infant who was abducted from a hospital nursery by a 19-year-old girl during a bomb scare, seek damages from the hospital for emotional injuries allegedly sustained by them as a result of the disappearance of the infant child. As a parenthetical note, the infant was subsequently recovered and an action has been commenced in her own behalf against the defendant hospital for negligent care. The issue presented on appeal is

whether Special Term erred in denying defendant hospital's motion to dismiss the complaint for failure to state a cause of action (CPLR 3211, subd [a], par 7). I am of the view that the direct injury in this action, if any, was sustained by the infant, and that plaintiffs' alleged emotional injuries indirectly resulted from the infant's disappearance, and, therefore, are not actionable.

The fundamental underpinning of any cause of action founded upon negligence is the existence of a duty, the breach of which is the proximate cause of the damage suffered by the injured party (*Becker v Schwartz*, 46 NY2d 401, 410; Prosser, Torts [4th ed], § 30, p 143). The term "duty" is a legal one used to express the conclusion that there can be liability (*De Angelis v Lutheran Med. Center*, 58 NY2d 1053, 1055). Absent legislative intervention, the question of whether a party owes a duty of care to another in any particular set of circumstances is a matter of law (*De Angelis v Lutheran Med. Center, supra;* Prosser, Torts [4th ed], § 37, p 206). In determining the question of the existence and extent of a duty, not only logic and science, but policy as well, must be considered (*De Angelis v Lutheran Med. Center, supra*). " 'The duties of conduct which give rise to [tort actions] are imposed by the law, and are based primarily upon social policy' " (*Victorson v Bock Laundry Mach. Co.*, 37 NY2d 395, 401). The policy factors generally to be considered in determining the existence of a duty are foreseeability of the injury, proliferation of claims, fraudulent claims, the inconsistency of the zone of danger rule, unlimited liability, unduly burdensome liability, and the difficulty of circumscribing the area of liability (*Tobin v Grossman*, 24 NY2d 609, 615).

In *Donohue v Copaigue Union Free School Dist.* (64 AD2d 29, 33, affd 47 NY2d 440), this court stated: "Judicial recognition of the existence of a duty of care is dependent upon principles of sound public policy and involves the consideration of numerous relevant factors which include, *inter alia: moral* considerations arising from the view of society towards the relationship of the parties, the degree to which the courts should be involved in the regulation of that relationship and the social utility of the activity out of which the alleged injury arises; *preventative* considera-

tions, which involve the ability of the defendant to adopt practical means of preventing injury, the possibility that reasonable men can agree as to the proper course to be followed to prevent injury, the degree of certainty that the alleged injuries were proximately caused by the defendant and the foreseeability of harm to the plaintiff; *economic* considerations, which include the ability of the defendant to respond in damages; and *administrative* considerations, which concern the ability of the courts to cope with a flood of new litigation, the probability of feigned claims and the difficulties inherent in proving the plaintiff's case (see Prosser, Law of Torts [4th ed], § 4, pp 16-23; *Raymond v Paradise Unified School Dist. of Butte County,* 218 Cal App 2d 1, 8-9; *Rowland v Christian,* 69 Cal 2d 108)."

Applying these policy considerations to the case at bar, I believe that the defendant hospital's duty, and resulting liability, must be limited in this instance to the care and treatment of its patient, the infant child. The hospital has the duty to exercise reasonable care and diligence in safeguarding a patient from harm occasioned by employees or third persons, measured by the capacity of the patient to provide for her own safety (*Conte v Hospital for Joint Diseases,* 31 AD2d 744). While in this instance the hospital might have foreseen that any injury to the child, including wrongful abduction, would cause psychic injury to the child's parents, similar harm to the child's grandparents, siblings and other relatives, and perhaps even unrelated caretakers, was equally foreseeable. Extension of a duty to all those who might foreseeably suffer harm from the shock of injury to the child would create virtually unlimited and unduly burdensome liability. If we are to recognize a cause of action permitting third parties to recover for emotional injury suffered as the result of direct injury to another, "there appears to be no rational way to limit the scope of liability" (*Tobin v Grossman, supra,* p 618). Sound policy requires that we limit the legal consequences of a wrong to a controllable degree (*Tobin v Grossman, supra,* p 619). "[T]here is no duty to protect from emotional injury a bystander to whom there is otherwise owed no duty, and, even as to a participant to whom a duty is owed, such injury is compensable only when a direct, rather than a

consequential, result of the breach" (*Kennedy v McKesson Co.,* 58 NY2d 500, 506). Application of this rule is best illustrated by examination of the prior decisions involving recovery for emotional injuries. In *Kennedy v McKesson Co.* (*supra*), the court delineated three distinct lines of cases in this area.

First, where there is a duty owed by the defendant to the plaintiff, emotional harm directly resulting from a breach of that duty is compensable. For example, in *Ferrara v Galluchio* (5 NY2d 16), plaintiff suffered burns as a result of negligent administration of X-ray treatments by defendant. She was subsequently treated by another doctor, who advised her of an increased risk of cancer at the location of the burn. Plaintiff thereafter sued the doctor who had administered the X rays, alleging causes of action for both physical and emotional injury, i.e., cancerophobia, and the court permitted recovery as to both. In *Battalla v State of New York* (10 NY2d 237), plaintiff was permitted to recover for fright allegedly caused by the negligence of a State employee who had failed to secure and properly lock the belt on a chair lift in which plaintiff was riding. In *Johnson v State of New York* (37 NY2d 378), plaintiff was falsely and negligently notified by defendant State hospital that her mother, a patient, had died (the mother was, in fact, alive and well). The court held that plaintiff could recover for emotional harm because the hospital, in assuming the duty to notify plaintiff of her mother's death, owed a direct duty to her. Finally, in *Lando v State of New York* (39 NY2d 803), plaintiff's daughter, a patient at defendant State hospital, wandered away from her ward and subsequently died. Because of defendant's negligent failure to have undertaken a careful and diligent search of the premises, her body was not found for 11 days. The court held that plaintiff was entitled to damages for mental anguish caused by defendant's breach of its duty to give him access to and control over his daughter's body during the 11-day period. The common thread running throughout these cases is the existence of a duty of care owed by defendant to plaintiff, the breach of which is the direct cause of the emotional injury. In such instances, emotional injury is compensable, with or without contemporaneous physical injury.

Second, in the absence of a duty of care flowing directly from defendant to plaintiff, no cause of action lies for the unintended emotional harm sustained by plaintiff solely from injuries inflicted directly upon another, regardless of the relationship and regardless of whether plaintiff was an eyewitness to the incident which resulted in the direct injuries. Thus, in *Tobin v Grossman (supra)*, a mother was not permitted to recover for mental anguish caused when her child was struck by a car and injured. In *Lafferty v Manhasset Med. Center Hosp.* (54 NY2d 277), plaintiff daughter-in-law was denied recovery for emotional injuries caused when mismatched blood was transfused into her mother-in-law, a patient at defendant hospital. The court reiterated the view that while the hospital had breached its duty to its patient, there was no corresponding duty to plaintiff, a third party. Hence, the shock she suffered as a result of the direct injury to her mother-in-law was not actionable. In *Rainnie v Community Mem. Hosp.* (87 AD2d 707), defendant hospital negligently refused to admit plaintiff's infant son, who was suffering from acute early meningococcal meningitis. The court dismissed those causes of action alleging emotional harm to the parents, holding that defendant's sole duty of care was to the infant (see, also, *Aquilio v Nelson,* 78 AD2d 195).

Third, even where there exists a duty owed by defendant to plaintiff, where breach of that duty results in physical injury to a third person, but only emotional injury to plaintiff, the latter is not compensable. It is the physical injury to the third person, not defendant's breach, which is the proximate cause of the emotional injury; such injury is a consequential, rather than direct, result of the breach. Illustrative of this principle are those cases in which parents of children born with birth defects seek damages from physicians who have allegedly failed to advise them of the potential risk of such defects at a time when pregnancy could have been prevented or aborted (see, e.g., *Becker v Schwartz, supra; Park v Chessin,* 46 NY2d 401; *Howard v Lecher,* 42 NY2d 109). In these cases the mother was not a mere "bystander"; the doctor providing prenatal care had a duty to both the mother and the fetus. Nevertheless, recovery for physic or emotional harm was denied.

Most recently, in *Kennedy v McKesson Co. (supra)*, plaintiff, a dentist, received from defendant an anesthetic machine on which the color coded identification decals for the oxygen and nitrous oxide connections had been negligently reversed. Thereafter, plaintiff, intending to administer oxygen to a patient, in fact administered nitrous oxide, causing the patient's death. Recognizing the existence of a duty to both plaintiff and his patients, the court permitted recovery for plaintiff's pecuniary loss, but denied recovery for the emotional injury claimed to have been sustained by him: "recovery for breach of duty includes damages for emotional injury only to the extent that that injury results directly rather than consequentially" (*Kennedy v McKesson Co., supra,* p 507).

Applying these principles to the case at bar, there can be no recovery by the parents for emotional harm. Since there was no duty of care flowing directly from the hospital to the parents of the patient, the emotional harm sustained by the parents solely as the result of the injury inflicted directly upon their child is not actionable (*Tobin v Grossman, supra*). Assuming, *arguendo,* that the hospital's duty ran to both the child and her parents, recovery by the parents for emotional injury would nevertheless be barred since the emotional injury to the parents did not occur as the direct result of the injury to their child. Thus, the parents' injury was a consequential, rather than direct, result of the hospital's breach, and is not compensable (*Kennedy v McKesson Co., supra*).

It may be that defendant hospital had a contractual duty to the parents in the care of the newborn infant, including the proper identification and safeguarding of the said infant. Assuming the hospital's failure to take such security measures to prevent or minimize the risk of the criminal act of abduction of the infant child from the hospital nursery to be a breach of a contractual duty to the parents, damages for mental distress on a theory of negligent breach of contract are not recoverable (*Boyce v Greeley Sq. Hotel Co.,* 228 NY 106; *Aaron v Ward,* 203 NY 351; *Frank v Justine Caterers,* 271 App Div 980; *Eisenbarth v Shearson Loeb Rhoades,* 110 Misc 2d 578; 13 NY Jur,

Damages, § 129, pp 620-621; 11 Williston, Contracts [3d ed], § 1341).

The complaint herein relates an unfortunate incident, but does not plead a cause of action cognizable at law. "While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree. The risks of indirect harm from the loss or injury of loved ones is pervasive and inevitably realized at one time or another. Only a very small part of that risk is brought about by the culpable acts of others. This is the risk of living and bearing children. It is enough that the law establishes liability in favor of those directly or intentionally harmed" (*Tobin v Grossman, supra,* p 619 [BREITEL, J.]).

Accordingly, I would reverse the order of Special Term and grant the motion to dismiss the complaint for failure to state a cause of action.

MOLLEN, P. J., and RUBIN, J., concur in the opinion of BOYERS, J.; BRACKEN, J., dissents and votes to reverse the order and grant defendant's motion to dismiss the complaint, with an opinion, in which THOMPSON, J., concurs.

Order of the Supreme Court, Queens County, dated December 23, 1981, affirmed, with costs.