TERRI LANDON, an Infant, by Her Father and Natural Guardian, LEONARD LANDON, et al., Respondents, v NEW YORK HOSPITAL et al., Defendants, and DONALD R. SKOG et al., Appellants.

First Department, May 22, 1984

APPEARANCES OF COUNSEL

*Matthew J. McMahon* of counsel (*Charles L. Bach, Jr.,* and *Matthew J. McMahon* with him on the brief; *Heidell, Pittoni & Moran, P.C.,* attorneys), for Donald R. Skog, appellant.

*Seymour Armstrong* of counsel (*Lawrence M. Rosenberg, Herbert M. Horowitz, P.C.,* and *Morton Berger,* attorneys), for respondents.

OPINION OF THE COURT

FEIN, J.

Defendants are alleged to have failed to diagnose, in a timely fashion, bacterial meningitis, contracted by the infant plaintiff. In the second and third causes of action,

plaintiff parents individually allege causes of action for psychic trauma, pain and agony of mind and body and other emotional and physical injury from this experience. In the fifth and sixth causes of action, each parent alleges loss of consortium as a result of the other's injuries as alleged in the second and third causes of action.

In essence, the parents seek recovery for the emotional harm or distress sustained in witnessing their child's deterioration from meningitis, for the fear that they themselves might have contracted meningitis, and for the harm done to them by their exposure to meningitis during the period of alleged delay in diagnosis and treatment.

It has repeatedly been held that there is no recovery in this State for psychic or emotional injuries suffered as a result of observing injury inflicted upon one's child (*Becker v Schwartz,* 46 NY2d 401; *Tobin v Grossman,* 24 NY2d 609). This principle extends to the area of medical malpractice in negligently failing to diagnose a malady or disease, or risk of same, to which the plaintiffs' child has become exposed (*Howard v Lecher,* 42 NY2d 109; *Aquilio v Nelson,* 78 AD2d 195; see, also, *Vaccaro v Squibb Corp.,* 52 NY2d 809). These and other cases hold that psychic or emotional injury is cognizable only when alleged by one to whom a duty of care was owed or who has also suffered direct injury as a result of another's negligence or malpractice (see *Shanahan v Orenstein,* 52 AD2d 164, app dsmd 40 NY2d 985). However, where a duty to the parent is breached, liability ensues. This was the case in *Johnson v Jamaica Hosp.* (95 AD2d 598), where the parents were permitted to sue to recover for psychic injuries stemming from their 9-day-old daughter's "disappearance" from the defendant hospital to which they had entrusted her. The child had been kidnapped from the hospital. A divided court ruled that the hospital "owed a direct duty to the plaintiffs to care for and protect their infant daughter whom they had left in its custody, and plaintiffs, as 'direct victims' * * * of the breach complained of, are possessed of a cognizable cause of action for their psychic injuries (cf. *Kennedy v McKesson Co.,* 58 NY2d 500). Such a claim constitutes an exception to the general rule precluding recovery for negligently caused psychological trauma with

ensuing emotional, rather than physical, consequences" (95 AD2d, at pp 599-600).

In contrast, a doctor or a hospital cannot be held liable to the patient's family for emotional distress or psychic harm as a result of malpractice in treating the patient (*Quijije v Lutheran Med. Center*, 92 AD2d 935, app dsmd 59 NY2d 1025; *Rainnie v Community Mem. Hosp.*, 87 AD2d 707, mot for lv to app den 57 NY2d 607; *Bessette v St. Peter's Hosp.*, 51 AD2d 286).

In any case of medical malpractice, it is foreseeable that many individuals at various degrees of closeness to the directly injured party will suffer emotional distress. If such foreseeability is held to create or define a duty as a foundation for liability, it may well open our courts to an inundation of claims for emotional injuries extending far afield of the epicenter of the injury, "like the ripplings of the waters, without end" (*Tobin v Grossman*, 24 NY2d, at p 619). Thus far, this problem has been dealt with in this State by limiting recovery for emotional distress to those directly injured as a result of the act of negligence or malpractice, and denying the claims of third parties as mere "bystanders" (*Lafferty v Manhasset Med. Center Hosp.*, 54 NY2d 277).

Special Term recognized as much in interpreting the second and third causes of action in the complaint as stemming not from the adult plaintiffs' observance of the disease's impact upon the infant plaintiff, but rather from "the psychic injuries and the increased apprehension of contracting the disease * * * alleged to flow from the increased exposure to meningitis". In this respect, the court viewed the adult plaintiffs as parties directly injured by the malpractice because of their alleged trauma over exposure to their child's contagious disease. Such a theory of recovery would open up a wide area for claims in that anyone having a reasonable fear of exposure to a contagious disease, no matter how distantly related to the victim of the disease, would now have a cognizable cause of action against a doctor who failed timely to make a proper diagnosis. Neither logic nor policy warrant an extension of the scope of duty owed to such a widening class of potential claimants. Indeed, the only cases permitting recovery for

fear of contracting a *non*contagious disease involved claims on behalf of the patients themselves, the victims of the malpractice alleged (*Ferrara v Galluchio,* 5 NY2d 16; see *Trapp v Metz,* 28 NY2d 913, revg 35 AD2d 851). Opening our courts to the claims of third parties who fear the potential exposure to a contagious disease would escalate liability to all relatives and friends of the victim.

Since this case was argued, the Court of Appeals has reviewed the applicable law in deciding two cases, *Bovsun v Sanperi* and *Kugel v Mid-Westchester Ind. Park* (61 NY2d 219). In *Bovsun,* the mother and daughter were passengers in a station wagon driven by the father. He stopped the car at the side of the road, alighted from the vehicle, went around to the rear and leaned inside the open tailgate window. His wife remained seated in the front passenger seat and the daughter in the rear passenger seat. The station wagon was struck in the rear by an automobile. The father was seriously injured. The mother and daughter suffered less serious injuries. Neither the mother nor the daughter actually saw the other vehicle strike their station wagon and injure the father. In the action brought to recover for the injuries sustained by the father, the mother and daughter included causes of action to recover damages for emotional distress premised upon the father's injuries.

In *Kugel (supra),* the family car was being driven by the father. The mother was in the front passenger seat with their one-year-old daughter in her lap. The other daughter, four years old, was also seated in the car. The car was struck by an automobile, causing physical injuries to all four members of the family. The one-year-old daughter died a few hours after the accident as a result of various severe injuries alleged to have been sustained in the accident. In the action to recover damages for the injuries sustained, the parents sought damages for "the immediate severe emotional trauma of seeing [the one year old] suffer extreme physical injury within their close proximity" (*supra,* p 226).

The Court of Appeals sustained both complaints, albeit acknowledging the reluctance of the courts of this State to recognize any liability for mental distress which may result from the mere observation of a third person's peril or

harm. The court distinguished *Tobin v Grossman (supra)*, where recovery was denied a mother who had been in no danger of bodily harm herself but had sought damages for the mental distress she suffered in viewing the serious injuries sustained by her daughter when the child was struck by an automobile. There the premise for the denial of liability was that liability to the foreseeable bystander could not be limited in any rational way and could lead to unlimited liability albeit the bystander may well have been within the "zone of danger".

The *Tobin* court stated (24 NY2d, at p 613) that the issue was "whether the concept of duty in tort should be extended to third persons, who do not sustain any physical impact in the accident or fear for their own safety." The zone-of-danger rule allows one who is threatened with bodily harm in consequence of a defendant's negligence to recover for emotional distress resulting from viewing the death of, or serious physical injury to, a member of his or her immediate family. The zone-of-danger rule has been adopted by the Restatement (Torts 2d, § 436, subd [2]).

The Court of Appeals, in *Bovsun* (61 NY2d, at pp 230-231), concluded that the *Tobin* requirement of a reasonably objective standard to hold " 'strict rein on liability' " could be met by a modified zone-of-danger rule.

"We therefore hold that where a defendant negligently exposes a plaintiff to an unreasonable risk of bodily injury or death, the plaintiff may recover, as a proper element of his or her damages, damages for injuries suffered in consequence of the observation of the serious injury or death of a member of his or her immediate family — assuming, of course, that it is established that the defendant's conduct was a substantial factor bringing about such injury or death.

"In so holding, we reject any suggestion that the zone-of-danger rule is overly susceptible to fraudulent claims or that the emotional injuries claimed here are incapable of acceptable proof. We previously disposed of these arguments in *Batalla v State of New York* (10 NY2d 237, 240-242): 'Although fraud, extra litigation and a measure of speculation are, of course, possibilities, it is no reason for a court to eschew a measure of its jurisdiction. "The argu-

ment from mere expediency cannot commend itself to a Court of justice, resulting in the denial of a logical legal right and remedy in *all* cases because in *some* a fictitious injury may be urged as a real one." * * * The only substantial policy argument * * * is that the damages or injuries are somewhat speculative and difficult to prove. However, the question of proof in individual situations should not be the arbitrary basis upon which to bar all actions * * * In the difficult cases, we must look to the quality and genuineness of proof, and rely to an extent on the contemporary sophistication of the medical profession and the ability of the court and jury to weed out the dishonest claims.' "

Whether these conclusions require affirmance in this case is open to question. The Court of Appeals specifically stated (61 NY2d, at p 232): "The zone-of-danger rule that we adopt here is not inconsistent with the past decisions of our court that have denied recovery for emotional distress attributable to a family member's death or injury (e.g., *Lafferty v Manhasset Med. Center Hosp.*, 54 NY2d 277; *Vaccaro v Squibb Corp.*, 52 NY2d 809; *Becker v Schwartz*, 46 NY2d 401; *Howard v Lecher*, 42 NY2d 109). None of those cases involved plaintiffs who had themselves been subjected to a danger of bodily harm, although some of the plaintiffs had been present during, had observed, and even had participated in the negligent conduct. In *Becker v Schwartz* (46 NY2d 401, *supra*), in which the plaintiffs were not exposed to bodily harm, it is significant that although no recovery was allowed for emotional distress, the plaintiffs were allowed to seek recovery for pecuniary losses sustained in consequence of the defendant's breach of due care owed them in that regard. Similarly, in our most recent decision in this area, *Kennedy v McKesson Co.* (58 NY2d 500 * * *), although the plaintiff there was also allowed to seek recovery for his pecuniary losses, recovery of damages for emotional disturbance was denied — he had not been exposed to a risk of bodily harm by the negligence of the defendant. Moreover, in *Kennedy* the person whose death the plaintiff witnessed was not a member of his immediate family. In none of these cases would the result have been different under the rule that we apply in this case."

It is notable that the court concluded that its holding was consistent with *Howard v Lecher* (*supra*), where the issue presented was whether the parents could recover for mental distress from a doctor who negligently failed to advise them of the risk that their infant daughter might be born with a genetic degenerative disease, which turned out to be the case. In short, the doctor failed to make a proper diagnosis and to advise the parents that the child might suffer from Tay-Sachs disease. *Howard,* surviving the *Bovsun* analysis, would seem to be dispositive here.

In *Bovsun* (*supra*), the Court of Appeals likewise distinguished *Becker v Schwartz* (*supra*). In that case, the action for emotional distress was premised upon the failure of the doctor to advise the pregnant mother that she would likely give birth to a brain damaged infant who would suffer her entire life from Down's Syndrome, and in the companion case (*Park v Chessin*) upon the failure to diagnose the likelihood that the unborn child had an hereditary polycystic kidney disease from which the child suffered and eventually died. In both cases, the causes of action by the parents for psychic injury due to observing the diseased condition of their children were dismissed for the policy reason that such a duty, once recognized, could not be limited within acceptable boundaries. Similar is *Vaccaro v Squibb Corp.* (*supra*), where a cause of action by parents for psychic harm, due to the birth of a daughter without limbs allegedly caused by ingestion of a drug during pregnancy, was dismissed on the basis of *Howard* and *Becker* (*supra*).

Nothing in *Bovsun* (*supra*) or in this case indicates a departure from the principle of these cases is required. The negligence alleged is the failure of the doctor to diagnose properly an injury or disease suffered by a child. The duty of diagnosis ran to the child and not to the parents. To the extent that the parents were allegedly exposed to the disease prior to the diagnosis, no cause of action is properly pleaded for the obvious reason that no damage was sustained during that period. To the extent that psychic damage is asserted to flow from periods of time after the diagnosis, obviously there can be no recovery since if there was a duty to the parents it was a duty properly and

promptly to diagnose the condition and so advise the parents. Plainly, no cause of action arises from such a lack of timely notification.

The sections of the State Sanitary Code and the City Health Code, upon which plaintiffs rely, require prompt notification of the diagnosis and the applicable requirements of isolation, exclusion and other precautions which must be taken to prevent the spread of the disease (State Sanitary Code, 10 NYCRR part 2, and especially 10 NYCRR 2.6, 2.27; NY City Health Code, §§ 11.09, 11.67).

Special Term found justification for its holding in these statutes, relying on article 11 of the New York City Health Code. Section 11.09 of that code requires a physician attending the case of a patient with a contagious disease to inform him "and his contacts of the applicable requirements of isolation, exclusion and other precautions which must be taken to prevent the spread of disease." It is alleged that defendants' tardy notification of the adult plaintiffs of their exposure to contagion was a breach of a duty owed them under the code. In the first place, section 11.09 does not create a private cause of action against a medical malpractitioner. Second, as a practical matter, it would be impossible for defendants to have notified plaintiffs under section 11.09 before they actually made the diagnosis of bacterial meningitis. The adult plaintiffs' trauma stemmed from their ultimate notification of exposure to the disease, and not from the fact that such notification was tardy. Thus, even if a duty toward plaintiffs could have been inferred from this section of the code, there is insufficient basis for claiming any breach of such duty.

Accordingly, the order, Supreme Court, New York County (Ernst H. Rosenberger, J.), entered April 22, 1983, denying the motion of defendants Skog and Pomeranz to dismiss the second, third, fifth and sixth causes of action should be reversed, on the law and the facts, the motion granted, and the second, third, fifth and sixth causes of action should be dismissed, with costs.

MURPHY, P. J., KUPFERMAN, CARRO and ASCH, JJ., concur.

Order, Supreme Court, New York County, entered on April 22, 1983, unanimously reversed, on the law and the

facts, the motion granted and the second, third, fifth and sixth causes of action are dismissed. Appellants shall recover of respondents $75 costs and disbursements of this appeal.