JOHN F. MILLER et al., Respondents-Appellants, v DONALD RIVARD et al., Appellants-Respondents.

Third Department, June 11, 1992

332

### APPEARANCES OF COUNSEL

*O'Connor & Yoquinto (Thomas J. O'Connor* of counsel), for appellants-respondents.

*Kelleher & Flink (Edward B. Flink* of counsel), for respondents-appellants.

### OPINION OF THE COURT

LEVINE, J.

In this action, plaintiffs, John Miller and Sharon Miller, have sued defendant Capital Area Community Health Plan Inc. (hereinafter CHP) and its physician/employee, defendant Donald Rivard, for various damages arising out of the conception and subsequent birth of a normal, healthy child in January 1989. The gravamen of their suit is what courts and commentators have come to call "wrongful conception" or "wrongful pregnancy", i.e., the negligent performance of a sterilization or abortion procedure by a physician, or the negligent filling of a contraceptive prescription by a pharmacist, as a result of which the plaintiffs conceived and became the parents of a healthy but unwanted child *(see, Weintraub v Brown,* 98 AD2d 339, 342; *see also, Phillips v United States,* 508 F Supp 544, 545, n 1; Prosser and Keeton, Torts § 55, at 370-372 [5th ed]).*

As set forth in the allegations of the complaint and in plaintiffs' submissions to Supreme Court on the cross motions for summary judgment herein, after having had three children in a period of only 2½ years, plaintiffs consulted their physicians at CHP regarding sterilization to prevent a fourth pregnancy and Mr. Miller was then referred to Rivard, a urologist on the staff at CHP, regarding a vasectomy. Rivard was told that a prime motivating factor was the couple's

---

* The instant suit is to be contrasted with the related suits for (1) "wrongful birth", in which the parents complain essentially of a negligent failure to give adequate genetic counseling, causing them to forego the opportunity to avoid conception or to terminate the pregnancy in order to prevent having a child suffering from genetic birth defects *(see, Phillips v United States, supra),* and (2) "wrongful life", a claim brought on behalf of the child of the wrongful birth for its suffering as a result of being born in a genetically impaired condition *(see, Becker v Schwartz,* 46 NY2d 401, 406).

concern for Mrs. Miller's physical well-being "and the need to protect her from the ardures *[sic]* of another pregnancy".

Rivard performed a vasectomy on Mr. Miller on April 30, 1987. Pursuant to Rivard's instructions and as a regular part of the vasectomy procedure, fertility tests were performed at CHP on Mr. Miller's semen on June 30, 1987 and August 5, 1987. Also pursuant to Rivard's instructions, Mr. Miller called Rivard's office two days after the second test and was advised by his nurse that the vasectomy was successful, that his sperm count was at an infertile level and that he and Mrs. Miller could resume sexual relations without any other contraceptive measures. However, the following spring, Mrs. Miller discovered that she was pregnant and a further fertility test revealed that Mr. Miller was still fertile. Mrs. Miller experienced severe medical complications during her pregnancy and delivery of the child, ultimately resulting in further surgery and the performance of a hysterectomy under emergency conditions.

Plaintiffs' suit was commenced by service of a summons and complaint on February 6, 1990. The complaint alleged defendants' negligence and malpractice with respect to the performance of the vasectomy, the fertility testing of Mr. Miller and the reporting to him of the results of such testing. Causes of action were set forth for (1) Mr. Miller's personal physical and emotional injuries and pecuniary losses, (2) Mrs. Miller's loss of consortium while her husband was recovering from the vasectomy, (3) Mrs. Miller's personal physical and emotional injuries and pecuniary losses as a result of the unwanted pregnancy and delivery of the child, (4) Mr. Miller's derivative claim for loss of consortium as a result of his wife's physical injuries, and (5) both plaintiffs' claim for the expenses of rearing their fourth child until the age of majority.

After defendants interposed an answer to the complaint containing, *inter alia,* the affirmative defense of the Statute of Limitations, plaintiffs moved for partial summary judgment dismissing the Statute of Limitations defense. Defendants then cross-moved for summary judgment dismissing all causes of action in the complaint as time barred and, alternatively, for the dismissal on grounds of legal insufficiency of the third cause of action for Mrs. Miller's personal injuries because of the absence of any doctor-patient relationship between her and defendants and of the fifth cause of action for the expenses of raising the child. Supreme Court granted dismissal of defendants' Statute of Limitations defense, concluding there

was continuous treatment tolling the statute until August 7, 1987, the date when Mr. Miller was advised of the results of the August 5, 1987 fertility test, so that the commencement of the action on February 6, 1990 was just within the 2½-year Statute of Limitations for malpractice actions (CPLR 214-a). The court, however, dismissed plaintiffs' second and fifth causes of action. These cross appeals followed.

On appeal, defendants have conceded that the continuous treatment doctrine renders timely Mr. Miller's primary malpractice cause of action for his own injuries. Likewise, plaintiffs have abandoned their cross appeal from the dismissal of their second and fifth causes of action. Thus, two issues remain outstanding: (1) whether Mrs. Miller has a valid primary cause of action against her husband's health providers for her own personal injuries and losses from wrongful conception caused by defendants' alleged negligently performed vasectomy, fertility testing and reporting of test results, and (2) whether any of the causes of action arising out of Mrs. Miller's physical injuries from the wrongful conception are barred by the Statute of Limitations.

■ Regarding the first of these issues, defendants argue that the absence of a doctor-patient relationship between Rivard and Mrs. Miller precludes the existence of any duty directly to her which may have been breached by malpractice committed upon her husband. Therefore, according to defendants, to permit her to recover against her husband's doctors for her own personal injuries and pecuniary losses arising from this wrongful conception, no matter how foreseeable, would be an unwarranted, unmanageable extension of traditional tort principles. We disagree. First, recognition of an independent right of recovery for Mrs. Miller's own injuries from wrongful conception due to an unsuccessful vasectomy performed on her husband is fully supported by precedent. In this State, two other Departments have explicitly recognized a cause of action on behalf of the wife of a vasectomy patient against the physician who performed the procedure, for her pain and suffering and emotional distress resulting from the pregnancy and delivery of the child *(see, Weintraub v Brown*, 98 AD2d 339 [2d Dept], *supra; Sorkin v Lee*, 78 AD2d 180 [4th Dept], *appeal dismissed* 53 NY2d 797). To deny recovery to Mrs. Miller on the theory that defendants' duty only extended to her husband, as their patient, also appears to be inconsistent with the holding in *Becker v Schwartz* (46 NY2d 401, *supra).* In the companion cases in *Becker,* the Court of Appeals upheld

an award of damages to the plaintiff *husbands* as well as wives, for their respective pecuniary losses for wrongful birth, as against the wives' obstetricians, finding a breach of duty to each plaintiff spouse in the defendants' failure to give proper genetic advice *(supra,* at 412-413). Moreover, affording Mrs. Miller a primary cause of action on her own behalf for her physical injuries accords with the overwhelming majority position in other jurisdictions, under which each spouse is entitled to recover as damages his or her own physical, emotional and pecuniary loss from a wrongful conception, irrespective of which spouse was the actual recipient of the negligently performed sterilization, fertility testing or test result reporting *(see,* Prosser and Keeton, Torts § 55, at 372 [5th ed]; Annotation, 83 ALR3d 15; Annotation, 27 ALR3d 906).

Nor can we accept defendants' claim that recognizing a cause of action on Mrs. Miller's behalf for her own injuries incurred from the wrongful conception caused by the vasectomy unsuccessfully performed on her husband would extend traditional tort liability beyond manageable bounds. The limits of recovery for wrongful conception and related causes are already reasonably well delineated. Thus, no recovery is permitted for the ordinary expenses of raising a normal child wrongfully conceived as the result of an unsuccessful sterilization *(see, O'Toole v Greenberg,* 64 NY2d 427, 432; *Weintraub v Brown, supra,* at 348-349; *Sorkin v Lee, supra,* at 184; *Sala v Tomlinson,* 73 AD2d 724, 726, *lv dismissed* 49 NY2d 701, *appeal dismissed* 49 NY2d 801). There is also no right of recovery for emotional distress occasioned merely by the contemplation of having to bear an unwanted child *(Sala v Tomlinson, supra).* Likewise, New York has restricted the categories of damages in the instance of the wrongful birth of a genetically impaired child, so that there is no recovery on behalf of the child for wrongful life, and none for the parents' mental distress in having to bear and raise the child in its impaired state *(see, Becker v Schwartz, supra,* at 412-413). Indeed, the basic parameters of the damages sought here are the same as would admittedly have been recoverable had the unsuccessful form of sterilization chosen by plaintiffs been a tubal ligation of Mrs. Miller, rather than Mr. Miller's vasectomy *(see, Sala v Tomlinson, supra; cf., O'Toole v Greenberg, supra,* at 430, n 2). There is no sound reason in policy, fairness or in the fulfillment of the role of tort law as a deterrent to negligent conduct for there to be any distinction in exposure

to liability as between medical practitioners depending upon the type of sterilization performed.

█ In our view, imposing liability on Mr. Miller's physicians for Mrs. Miller's claim, despite the lack of a doctor-patient relationship between them, also falls well within traditional tort principles. According to plaintiffs' submissions, it was not merely foreseeable that Mrs. Miller might suffer serious injuries in the event of becoming pregnant as a result of any negligent performance of her husband's vasectomy or fertility testing. As Rivard was made aware, avoidance of a potentially injurious fourth pregnancy for Mrs. Miller was the essential purpose of Mr. Miller's undergoing the entire sterilization procedure. Such awareness is sufficient, under long-standing tort doctrine, to subject Rivard to liability for Mrs. Miller's injuries resulting from his negligent performance of the procedures she relied upon, despite the lack of any direct doctor-patient relationship between them. Thus, in *Glanzer v Shepard* (233 NY 236, 238-239), the public weighers hired by the seller of beans were held liable to the buyers for negligent weighing, despite the lack of any direct relationship between them, because the buyers' reliance on the accuracy of the defendants' weight certificate "was not an indirect or collateral consequence of the action of the weighers. It was a *consequence which, to the weighers' knowledge, was the end and aim of the transaction*" (emphasis supplied). More recently, the Court of Appeals has specifically recognized that a physician preparing a report of a medical examination may owe a duty of care to a limited class of persons other than the patient examined. "In completing this particular report, the physician plainly owed a duty of care to his patient *and to persons he knew or reasonably should have known were relying on him for this service to his patient*" (*Eiseman v State of New York,* 70 NY2d 175, 188 [emphasis supplied]).

The applicable principle extending defendants' duty of care to Mrs. Miller is embodied in its modern form in Restatement (Second) of Torts § 324 A:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if * * *

"(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

Nor can we accept defendants' contention that granting a cause of action to Mrs. Miller for her pain and suffering from wrongful conception results in unmanageable liability against physicians because it creates an arbitrary distinction between wives and other women who may incur wrongful conception as a result of an unsuccessful vasectomy performed upon their mates. Restricting recovery of tort claimants to the legal spouse or family of the person directly acted upon is not an uncommon method of limiting the scope of liability to a manageable, predictable class, as applied, for example, to derivative claims *(see, Briggs v Butterfield Mem. Hosp.,* 104 AD2d 626; *Rademacher v Torbensen,* 257 App Div 91), and to claims for injuries from shock or fright caused by observation of the serious injury or death of another person in the plaintiff's presence *(see, Bovsun v Sanperi,* 61 NY2d 219, 231-232). For all the foregoing reasons, we uphold Supreme Court's denial of defendants' motion to dismiss the third cause of action for legal insufficiency.

■ The remaining issue is whether the 2½-year malpractice Statute of Limitations (CPLR 214-a) bars Mrs. Miller's cause of action for her own personal injuries attributable to wrongful conception (the legal sufficiency of which we have just upheld) and Mr. Miller's derivative claim arising out of his wife's injuries. We hold that these claims are not time barred. On appeal, defendants have conceded that the continuous treatment doctrine extended the triggering of the Statute of Limitations as to Mr. Miller's primary malpractice cause of action to August 7, 1987, the date when he was advised of the test results indicating that he was infertile and could resume normal sexual relations with his wife without using any contraceptive measures. Implicit in this concession is the further concession that the course of related, continuous treatment in the case of a vasectomy performed for the purpose of birth control does not end until completion of the postoperative procedures of fertility testing and notification to the patient that the test results show that the vasectomy was a success. We would so hold, had there been no such concession. This effectively distinguishes the instant case from the recent decision in *Jorge v New York City Health & Hosps. Corp.* (79 NY2d 905), relied upon by defendants. In *Jorge,* the Court of Appeals held that the Statute of Limitations for a malpractice action based upon the negligent testing of the plaintiff husband for the sickle cell anemia trait in January 1985 was not tolled by the continuous obstetrical treatment of

the plaintiff wife until she gave birth to a child having sickle cell anemia in September 1985, because the testing of the husband and the obstetrical care of the wife were not part of the same course of treatment. Here, as already noted, the vasectomy and postoperative procedures of testing and reporting were concededly part of the same course of treatment.

Defendants nonetheless argue that the continuous treatment doctrine does not toll the Statute of Limitations on Mrs. Miller's cause of action for her own injuries beyond the date of the performance of the vasectomy because her claim is "derivative" (citing, *inter alia, Allison v Booth Mem. Med. Center,* 155 AD2d 497). This clearly mischaracterizes the nature of her cause of action. As we have previously discussed, defendants' duty of care was extended to Mrs. Miller, the wife of their patient, because the prevention of her pregnancy and the accuracy of the test report of Mr. Miller's infertility were "consequence[s] which, to [defendants'] knowledge, [were] the end and aim of the transaction" *(Glanzer v Shepherd,* 233 NY 236, 238-239, *supra).* Since defendants allegedly were fully aware of Mrs. Miller's reliance on the truth of their report of Mr. Miller's infertility, as well as the effectiveness of the vasectomy operation itself, there is no reason why the continuous treatment doctrine should not toll the Statute of Limitations as to her cause of action as well as that of her husband. Moreover, all of the policy reasons underlying the continuous treatment doctrine (i.e., avoiding the premature termination of the doctor-patient relationship by the initiation of a lawsuit, thereby promoting the efficacy of medical care, and because the patient's original physician is best placed to discover and correct his or her own malpractice) apply with equal force to both spouses' claims *(see, Nykorchuck v Henriques,* 78 NY2d 255, 258). As to the tolling of the Statute of Limitations on Mr. Miller's derivative cause of action arising out of Mrs. Miller's injuries, it seems so obvious as to render unnecessary any extended discussion that, if the Statute of Limitations was tolled under the continuous treatment doctrine on Mr. Miller's primary cause of action, the policy reasons underlying the doctrine would require its application to toll the Statute of Limitations on his derivative claim.

For all the foregoing reasons, the order of Supreme Court should be affirmed in all respects.

WEISS, P. J., MIKOLL and MERCURE, JJ., concur.

Ordered that the order is affirmed, with costs to plaintiffs.