[778 NYS2d 791]

RICHARD J. SHAW et al., Individually and as Parents and Natural Guardians of CARRIE SHAW, an Infant, Appellants, v QC-MEDI NEW YORK, INC., et al., Respondents.

Fourth Department, June 14, 2004

## APPEARANCES OF COUNSEL

*Sonneborn, Spring & O'Sullivan, P.C.*, Syracuse (*Kristie M. Carter* of counsel), for appellants.

*Smith, Sovik, Kendrick & Sugnet, P.C.*, Syracuse (*Karen M. Richards* of counsel), for QC-Medi New York, Inc., and others, respondents.

*Levene, Gouldin & Thompson, LLP*, Binghamton (*John J. Pollock* of counsel), for Americare, Inc., and others, respondents.

## OPINION OF THE COURT

LAWTON, J.

Plaintiffs appeal from an order that granted those parts of defendants' cross motions for partial summary judgment dismissing the cause of action for negligent infliction of emotional distress. On appeal, plaintiffs contend that they have established the elements of a cause of action for negligent infliction of emotional distress under the zone of danger rule and/or that defendants owed a special duty to plaintiff Lee E. Shaw to exercise care for her protection.

Plaintiffs' daughter, Carrie Shaw, was born on March 14, 1996 with severe physical impairments. She is ventilator-dependent and requires 24-hour nursing care. Plaintiffs contracted with defendants to provide the nursing care. On May 15, 1998, Carrie was under the care of defendant Jean Sanders, L.P.N. According to plaintiff mother, Sanders called her on her cellular telephone while she was out of the home to inform her that an alarm on Carrie's ventilator had sounded. Sanders advised plaintiff mother that she did not know how to deactivate the alarm. Plaintiff mother was concerned because she knew that "a high-pressure alarm indicates resistance of some sort (i.e., blocked trach tube, external pressure or a kink in the ventilator tube, internal pressure from Carrie laughing or exercising, or true respiratory distress)," and she asked Sanders "how Carrie looked." Plaintiff mother immediately left for home and, upon arriving at the house, she "found Carrie in her room sweating profusely, very blue, and barely conscious." Carrie was transported to a hospital and thereafter recovered from the incident.

Prior to the incident, plaintiffs were concerned with the failure of defendants' nurses to "show up for work." Plaintiff father informed defendants by letter dated January 28, 1997 that plaintiff mother's severe diabetes was exacerbated by stress caused by their nurses' "lack of professional commitment." He further wrote that "the stress that [plaintiff mother] is under is literally killing her."

Plaintiffs commenced this action asserting, inter alia, a cause of action for negligent infliction of emotional distress "[a]s a result of [plaintiff mother's] hearing and observing her infant daughter hopelessly suffer through an extended period of suffocation, hypoxia and/or apoxia." Plaintiffs further asserted that plaintiff mother was in the zone of danger of her infant daughter. Defendants thereafter cross-moved for, inter alia, partial summary judgment dismissing "all claims of the parents for emotional distress." In support thereof, defendants contended that the facts and circumstances of this case do not constitute a zone of danger claim because there is no showing of the breach of an independent duty owing to plaintiff mother. In granting those parts of defendants' respective cross motions for partial summary judgment dismissing the cause of action for negligent infliction of emotional distress, Supreme Court reasoned that defendants "did not owe a duty to avoid bodily harm to [plaintiff mother], despite being on notice of her condition and the effect that stress had upon it." This appeal ensued.

Initially, we do not agree with the contention of plaintiffs that the breach of an independent duty need not be alleged or proven because they have asserted a "zone of danger" cause of action. In *Bovsun v Sanperi* (61 NY2d 219, 231 [1984]), the Court of Appeals first recognized the right of a plaintiff to recover "damages for injuries suffered in consequence of the observation of the serious injury or death of a member of his or her immediate family," but went on to clarify that it was not departing from traditional tort principles. The Court wrote:

> "We are not today creating a new cause of action which has not heretofore existed under the tort law of New York; rather we are recognizing the right of a plaintiff to whom the defendant has owed but breached a duty of reasonable care (as determined under traditional tort principles) to recover as an element of his or her damages, those damages attributable to emotional distress caused by contemporaneous observation of injury or death of a member of the immediate family caused by the same conduct of the defendant . . . In conformity with traditional tort principles, the touchstone of liability in these cases is the breach by the defendant of a duty of due care owed the plaintiff" (*id.* at 233).

In *Arroyo v New York City Health & Hosps. Corp.* (163 AD2d 9, 10 [1990]), a case similar to the one before us, the First

Department wrote: "Where the siblings were treated with discrete intravenous systems, we are unable to accept plaintiff's attempt to characterize the threat of bodily injury to the older sibling and the breach of defendant's duty of care as to him as identical to that posed to and suffered by the younger sibling."

Consequently, the sole issue to be determined on this appeal is whether defendants owed a duty to plaintiffs to refrain from acts that resulted in emotional distress to plaintiff mother. The issue of duty is one of law for a court to resolve (*see Tenuto v Lederle Labs., Div. of Am. Cyanamid Co.,* 90 NY2d 606, 612 [1997]). The issue of what duty is owed to third parties in a medical malpractice setting is a troubling one. Courts have been reluctant to hold a medical provider liable to the patient's family for emotional distress as a result of malpractice in treating the patient (*see Landon v New York Hosp.,* 101 AD2d 489, 490 [1984], *affd* 65 NY2d 639 [1985] *for reasons stated below*). This Court recently visited that issue in *Pingtella v Jones* (305 AD2d 38 [2003], *lv dismissed* 100 NY2d 640 [2003], *rearg denied* 1 NY3d 594 [2004]), wherein we held that a psychiatrist owed no duty of care to a child who was stabbed by his mother, the psychiatrist's patient, while the mother was in a psychotic state. Likewise, this Court previously wrote in *Yates v Genesee County Hospice Found.* (278 AD2d 928, 929 [2000], *lv denied* 96 NY2d 714 [2001]): "Under the common law, defendants have no duty to protect plaintiffs from emotional injuries sustained as the result of witnessing the allegedly negligent care provided to decedent by defendants (*see, Lafferty v Manhasset Med. Ctr. Hosp.,* 54 NY2d 277, 279-280)."

The Court of Appeals has taken a very restrictive view toward third-party liability in medical malpractice cases (*see Cohen v Cabrini Med. Ctr.,* 94 NY2d 639, 642 [2000]; *see also Landon,* 101 AD2d at 491). Nevertheless, the courts have periodically revisited this and other related issues. Recently, the Court of Appeals for the first time allowed a mother to recover damages for emotional distress by reason of medical malpractice that resulted in the stillbirth of her child (*see Broadnax v Gonzalez,* 2 NY3d 148 [2004]). In that case, however, the Court was quick to point out that recovery was limited to physical and psychological injuries to the mother by reason of her pregnancy and that no duty of care was owed to the expectant father, who was limited to seeking recovery on a claim for loss of services and consortium (*see id.* at 155 n 3).

Nevertheless, exceptions have been made in certain cases that, by their nature, extend to a very limited class of people.

*Miller v Rivard* (180 AD2d 331 [1992]) is such a case. In response to the public policy argument raised by the defendants therein, the Third Department noted that liability under its holding was limited to spouses who jointly decided to undergo a sterilization procedure, whether the procedure chosen was a tubal ligation for the wife or a vasectomy for the husband (*see id.* at 336-337). In *Tenuto* (90 NY2d at 613-614), the Court of Appeals held that a physician who prescribed and administered an oral polio vaccine to the plaintiffs' child owed a duty to warn and advise plaintiffs of the dangers associated with the administration of the vaccine. Likewise, the Third Department in *Miller* (180 AD2d at 337) noted that the Court of Appeals previously determined that a physician was liable to third parties where the physician knew or reasonably should have known that the third parties were relying upon his or her treatment (*see Eiseman v State of New York*, 70 NY2d 175, 188 [1987]). However, the First Department has determined that a physician's failure to diagnose bacterial meningitis in a timely manner, resulting in the fear of spread of the disease from child to parent, did not create a duty to the parents (*see Landon*, 101 AD2d at 495-496).

We therefore are faced with deciding whether a duty of care to the nonpatient plaintiff mother can be found in this case. We hold that such a duty cannot be found. The aforesaid sterilization and immunization cases present unique situations in which, by their very nature, a spouse or family member is intimately involved with the treatment of the patient. Further, the duty set forth in *Eiseman* (70 NY2d at 188) is narrowly framed, i.e., that, in completing a "particular report, the physician plainly owed a duty of care to his patient and to persons he knew or reasonably should have known were relying on him for this service to his patient." The Court of Appeals in *Eiseman* was careful to add that the physician "did not, however, undertake a duty to the community at large" (*id.*). In *Pingtella* (305 AD2d at 43), in limiting the psychiatrist's duty to the patient, we wrote:

> "To hold otherwise could place unacceptable restraints on the treatment of patients and leave medical providers open to a broad array of possible claims. Family members of a patient could allege a broad range of physical and emotional damages from the physician's treatment of the patient. We are not willing to extend a physician's liability in that manner."

To permit liability under these circumstances would create untold numbers of claims by third parties. Familial concerns are present in most instances involving relationships between health care providers and patients. Quite commonly, close family members are concerned with a patient's care and treatment. Were we to permit such liability as is sought by plaintiffs herein, medical providers would necessarily be concerned with matters unrelated to their treatment of patients.

Plaintiffs' contention that the facts of this case present at least an issue of fact with respect to the existence of an independent duty of care to plaintiffs is unavailing. The history of poor performance alleged by plaintiffs was primarily concerned with matters of attendance as opposed to quality of care. It certainly cannot be said that the agreement between plaintiffs and defendants created an independent duty of care to plaintiff mother. Further, the evidence presented by plaintiffs that they gave defendants notice of their concerns, as expressed in the letter of plaintiff father dated January 28, 1997, is insufficient to create an independent duty to plaintiff parents.

Accordingly, we conclude that the order should be affirmed.

PIGOTT, Jr., P.J., GREEN, PINE and WISNER, JJ., concur.

It is hereby ordered that the order so appealed from be and the same hereby is unanimously affirmed, without costs.