OPINION OF THE COURT
 

 Levine, J.
 

 Plaintiff Amy Margolis appeals from an Appellate Division order affirming dismissal of her cause of action for personal injuries she allegedly suffered by reason of the medical malpractice of defendant Dr. Richard Amelar in performing surgery upon her husband, plaintiff Alan P. Cohen. As set forth in the complaint, bill of particulars and other submissions in opposition to defendant’s motion to dismiss, Margolis alleges that, after unsuccessful efforts to conceive a child and consultations with various fertility experts, she and her husband consulted with Amelar, a urologist who specializes in male infertility. Upon Amelar’s recommendation, Cohen decided to undergo a bilateral varicolectomy, a surgical procedure to enhance his fertility. Amelar told the couple that there was a 50-70% chance of success and provided them with a study he had co-authored, “Varicole and Male Infertility: 25 Years’ Experience.”
 

 Amelar performed the surgery two months later at defendant Cabrini Medical Center. Instead of improving Cohen’s fertility, however, the complaint alleges that his sperm count dropped because Amelar improperly removed a section of artery as well as vein during the surgery. As a result, Margolis contends that she could be impregnated only through in vitro fertilization (IVF). After undergoing eight unsuccessful IVF attempts using Cohen’s sperm and her own eggs, she finally became impregnated on the ninth attempt, in which donor eggs and Cohen’s sperm were used.
 

 Both plaintiffs then commenced this action for damages caused by defendant’s alleged medical malpractice. The complaint contains three causes of action: (1) for personal injuries sustained by Cohen, (2) for personal injuries sustained by Margolis and (3) a derivative claim for Margolis’ loss of consortium. Amelar moved to dismiss the second cause of action for Margolis’ injuries and to strike from her bill of particulars any claims related to her pain, suffering and mental anguish due to the IVF procedures and her inability to bear her own genetic children with Cohen. Supreme Court granted defendant’s motion.
 

 The Appellate Division unanimously affirmed on the ground that Amelar did not owe Margolis any duty of care as
 
 *642
 
 she was not his patient (262 AD2d 159). It then certified the following question to this Court: “Was the order of the Supreme Court, as affirmed by this Court, properly made?” We answer that question in the affirmative.
 

 The personal injuries for which plaintiff Margolis seeks recovery here consist of psychological harm attributable to her loss of opportunity to achieve normal conception by her husband, and physical and psychological harm, plus pecuniary loss, all resulting from undergoing TVF procedures in order to conceive. The courts below properly held that plaintiff cannot recover because Amelar was under no legal duty of care to her to prevent those injuries.
 

 The imposition of a legal duty of care does not turn merely on the foreseeability of the harm resulting from an actor’s conduct
 
 (see, Tobin v Grossman,
 
 24 NY2d 609, 615), a factor heavily relied upon by plaintiff here. Rather, as we have repeatedly emphasized, “[cjourts resolve legal duty questions by resort to common concepts of morality, logic and considerations of the social consequences of imposing the duty”
 
 (Tenuto v Lederle Labs.,
 
 90 NY2d 606, 612).
 

 No duty can be imposed here on the basis of a doctor-patient relationship between plaintiff and Amelar. While plaintiff did participate in her husband’s consultation with the doctor, no treatment or care of plaintiff was ever contemplated. Although in limited circumstances a physician’s duty of care has been extended to a patient’s family members, our courts have been especially circumspect in doing so. Thus, no duty was found to run to parents from a physician who failed to make a timely diagnosis of their child’s meningitis, to prevent emotional harm from either “witnessing their child’s deterioration from meningitis, [or] for the fear that they themselves might have contracted meningitis”
 
 (Landon v New York Hosp.,
 
 101 AD2d 489, 490,
 
 affd for reasons stated below
 
 65 NY2d 639).
 

 On the other hand, in
 
 Tenuto (supra),
 
 we posited a pediatrician’s duty of care extending to the parent of an infant vaccinated for paralytic poliomyelitis. Allegedly because of the physician’s failure to warn or advise the parent to take precautions against “contact” polio, which results from contact with the feces or saliva of one who had received this specific form of polio vaccine, the parent became infected with the disease and was rendered a paraplegic. The parent’s averments in
 
 Tenuto
 
 were sufficient to establish a special relationship connecting physician, child and parent, and the resultant duty of care to
 
 *643
 
 the parent. The critical factors we identified in extending the duty included (1) the parent had engaged the physician and relied exclusively on his professional advice, (2) it was the physician’s acts in administering the vaccination to the infant that created the serious risk of physical harm to the parent and (3) the physician knew or should have known that the failure to "warn the parent of the serious peril heightened the risk.
 

 The lower courts have also extended physician liability to the wife of a patient for her physical injuries due to an unwanted pregnancy after a negligently performed vasectomy (see,
 
 Miller v Rivard,
 
 180 AD2d 331;
 
 Weintraub v Brown,
 
 98 AD2d 339;
 
 Sorkin v Lee,
 
 78 AD2d 180). Again, factors giving rise to a duty were present in each of those cases. That is, the procedure was undertaken specifically and expressly to prevent the wife’s pregnancy and consequential physical harm; both patient and wife relied upon proper performance; and the physical harm from the pregnancy was the direct outcome of the physician’s malpractice. Imposing a duty and liability for its breach in favor of the wife of the patient in those cases fell comfortably within established tort principles. As stated in Restatement (Second) of Torts § 324A:
 

 “[o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as
 
 necessary for the protection of a third person
 
 * * * is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care * * * if * * *
 

 “(c) the harm is suffered because of
 
 reliance
 
 of the other or the third person upon the undertaking” (emphasis supplied).
 

 Recognizing a legal duty of care running from the physician of plaintiffs husband to prevent the personal injuries claimed by plaintiff here would be an unwarranted extension of our narrowly drawn jurisprudence with respect to malpractice liability to a patient’s family member. First, the purpose of the procedure Amelar performed upon plaintiffs husband here was not to prevent physical harm to her
 
 (cf., Miller v Rivard, supra;
 
 Restatement [Second] of Torts § 324A), but to provide a benefit, that is, to promote conception by whatever means that goal could be achieved. Any physical harm suffered by plaintiff from submitting to IVF was the result of her voluntary election to undergo that additional procedure, over which Amelar did not and could not exercise any control. Contrastingly, in
 
 Tenuto,
 
 
 *644
 
 the infant patient’s parent did not contract polio because of any knowing, voluntary exposure to the disease but because the physician failed to warn and advise precautions against it. We decline to extend a physician’s duty of care to insure the conferral of a benefit upon the wife of a patient under these circumstances.
 

 Second, as to any psychological harm suffered by plaintiff as a result of the alleged negligence in performing the surgical procedure on her husband, liability for emotional injuries to a patient’s family members resulting from medical malpractice was rejected by this Court in
 
 Landon v New York Hosp. (supra).
 
 We find no difference in kind between those harms claimed in
 
 Landon
 
 and plaintiff’s claim here that would warrant a departure from that holding.
 

 To the extent that her claim of personal injury because of her husband’s loss of fertility concerns a harm separate and apart from the other claims we have discussed, plaintiff appears to be asserting a right to relief based essentially on “wrongful nonbirth,” the deprivation of an opportunity to have a child by her husband. We have rejected as too speculative a similar wrongful nonbirth claim asserted as a part of a derivative cause of action by the husband of a woman whose negligently inflicted injuries included a miscarriage
 
 (see, Endresz v Friedberg,
 
 24 NY2d 478;
 
 see also, Butler v Manhattan Ry. Co.,
 
 143 NY 417;
 
 Witrak v Nassau Elec. R. R. Co., 52
 
 App Div 234). We find the claim no less speculative when it is the wife rather than the husband who asserts a deprivation of parenthood with her spouse by negligent injury to him. It is especially speculative in this case. Plaintiffs own allegations establish that, although the ninth and final IVF procedure was successful, it involved her husband’s sperm and donor eggs, highlighting the tenuous connection between any alleged negligence on defendant’s part and her deprivation of genetic parenthood.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Ciparick, Wesley and Rosenblatt concur.
 

 Order affirmed, etc.