■ MOLLY STEPHEN et al., Appellants, v CITY OF NEW YORK et al., Defendants, and NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, Respondent. [27 NYS3d 221]—

In an action to recover damages for personal injuries, etc., the plaintiffs appeal, as limited by their brief, from so much of an order of the Supreme Court, Queens County (O'Donoghue,

J.), dated December 16, 2013, as granted the motion of the defendant New York City Health and Hospitals Corporation for summary judgment dismissing the complaint insofar as asserted against it.

Ordered that the order is affirmed insofar as appealed from, with costs.

The plaintiffs, Molly Stephen, Allie Hickenbottom, and Sarah Smith, were employees of Milestone Residence (hereinafter Milestone), a privately operated supervised residential facility which temporarily housed persons with mental illness or substance abuse, often after they had been discharged from psychiatric facilities. In January 2010, Waheed Foster was discharged from Creedmoor Psychiatric Center (hereinafter Creedmoor) with a diagnosis of schizophrenia, paranoid type, and antisocial personality disorder. He began residing at Milestone, while receiving outpatient treatment from Creedmoor. On June 3, 2010, due to threats he made to Milestone staff, Foster was admitted to a hospital operated by the New York City Health and Hospitals Corporation (hereinafter HHC) for 24-hour observation under section 9.40 of the Mental Hygiene Law. The next day he was discharged back to Milestone. On June 7, 2010, Foster walked into a third-floor office at Milestone and stabbed Stephen with a knife, then struck Smith and Hickenbottom, before fleeing from the facility.

The plaintiffs commenced this action against HHC, among others, alleging that HHC departed from good and accepted medical practice by, inter alia, discharging Foster from care, resulting in them sustaining severe personal injuries. HHC moved for summary judgment dismissing the complaint insofar as asserted against it. The Supreme Court granted the motion, and the plaintiffs appeal.

"[D]octors or a governmental subdivision of the State that employs them cannot be held responsible for damages resulting from the actions of a psychiatric patient who has been released when the patient's release is a matter of professional judgment" (*Mohan v Westchester County Med. Ctr.*, 145 AD2d 474, 474 [1988]; *see Schrempf v State of New York*, 66 NY2d 289, 296-297 [1985]; *Park v Kovachevich*, 116 AD3d 182, 190-191 [2014]). For liability to attach, it must be shown that the decision to release the patient was "something less than a professional medical determination" founded upon careful examination of the patient (*Bell v New York City Health & Hosps. Corp.*, 90 AD2d 270, 282 [1982]; *see Mohan v Westchester County Med. Ctr.*, 145 AD2d at 475; *Park v Kovachevich*, 116 AD3d at 191). "Evidence of a difference of opinion among

experts does not provide an adequate basis for a prima facie case of malpractice" (*Mohan v Westchester County Med. Ctr.*, 145 AD2d at 475; *see Centeno v City of New York*, 48 AD2d 812, 813 [1975], *affd* 40 NY2d 932 [1976]).

Here, HHC met its prima facie burden of demonstrating its entitlement to judgment as a matter of law dismissing the complaint insofar as asserted against it. Foster's medical records and the deposition testimony of the doctor who treated him at the HHC hospital, Dr. Saleem Nasir, demonstrated that, during the 24 hours he was at the HHC hospital, Foster calmed down, took his medication, slept through the night, ate breakfast with a good appetite, was able to follow directions, and denied having hallucinations or delusions. Foster was examined by Dr. Nasir for 20 to 25 minutes in the morning before he was discharged, and remained calm and coherent throughout, with no evidence of a lack of impulse control. The expert affirmation submitted by HHC was based on the medical records, and demonstrated that HHC did not depart from accepted medical standards and that, in any event, any alleged departure was not a proximate cause of the plaintiffs' injuries (*see Senatore v Epstein*, 128 AD3d 794, 795 [2015]). Contrary to the plaintiffs' contention, Dr. Nasir's correction of certain deposition testimony for purported typographical errors did not reveal an issue as to his credibility which precluded summary judgment (*see* CPLR 3116 [a]; *cf. Nye v Putnam Nursing & Rehabilitation Ctr.*, 62 AD3d 767, 768 [2009]; *Breco Envtl. Contrs., Inc. v Town of Smithtown*, 31 AD3d 359, 360 [2006]).

In opposition, the plaintiffs submitted an expert affirmation opining that HHC deviated from accepted standards of medical practice and failed to make a careful examination by failing to contact Foster's psychiatric providers at Creedmoor and his Milestone caseworker to inquire as to his condition and history of violence before making the determination whether to discharge him, and that those deviations proximately caused the plaintiffs' injuries. However, the expert failed to explain what, if any, information HHC did not already have which those parties could have provided, and which would have been necessary for a careful examination of whether Foster continued to meet the legal criteria for involuntary psychiatric observation, care, and treatment. The expert also failed to address the evidence that Foster did not meet the criteria for involuntary psychiatric observation, care, and treatment at the time of his discharge (*see* Mental Hygiene Law §§ 9.40 [b], [c], [d]; 9.39 [a]; *Franchini v Palmieri*, 1 NY3d 536, 537 [2003]; *Swanson v Raju*, 95 AD3d 1105, 1107 [2012]). These omissions

render the opinion conclusory (*see Park v Kovachevich*, 116 AD3d at 192; *Davis v Patel*, 287 AD2d 479, 480 [2001]). Moreover, absent a foundation in the medical records or testimony for the expert's opinion that Foster should have been held for 72 hours then transferred to a psychiatric hospital for admission (*see* Mental Hygiene Law §§ 9.40 [c]; 9.39 [a]), the expert's opinion that the alleged departures proximately caused the plaintiffs' injuries incurred three days after Foster's discharge was entirely speculative (*see Diaz v New York Downtown Hosp.*, 99 NY2d 542, 544 [2002]; *Sukhraj v New York City Health & Hosps. Corp.*, 106 AD3d 809 [2013]). Accordingly, the plaintiffs failed to raise a triable issue of fact, and HHC's motion was properly granted (*see Senatore v Epstein*, 128 AD3d at 795; *Gillespie v New York Hosp. Queens*, 96 AD3d 901, 902-903 [2012]). Dickerson, J.P., Hall, Austin and Roman, JJ., concur.