■ MICHAEL JOHNSON, as Executor of KEVIN DOWD, Deceased, Appellant, v NASSAU UNIVERSITY MEDICAL CENTER et al., Defendants, and KATHRYN ZAJAC, CSW, et al., Respondents. [32 NYS3d 323]—

In an action, inter alia, to recover damages for medical malpractice and wrongful death, the plaintiff appeals, as limited by his brief, from so much of an order of the Supreme Court, Nassau County (Palmieri, J.), entered May 13, 2014, as granted those branches of the motion of the defendants Kathryn Zajac and Catholic Charities of the Diocese of Rockville Centre-Freeport Clinic which were for summary judgment dismissing the amended complaint insofar as asserted against the defendant Kathryn Zajac and so much of the amended complaint as alleged that the defendant Catholic Charities of the Diocese of Rockville Centre-Freeport Clinic was vicariously liable for the acts or omissions of the defendant Kathryn Zajac.

Ordered that the order is reversed insofar as appealed from, on the law, with costs, and those branches of the motion of the defendants Kathryn Zajac and Catholic Charities of the Diocese of Rockville Centre-Freeport Clinic which were for summary judgment dismissing the amended complaint insofar as asserted against the defendant Kathryn Zajac and so much of the amended complaint as alleged that the defendant Catholic Charities of the Diocese of Rockville Centre-Freeport Clinic was vicariously liable for the acts or omissions of the defendant Kathryn Zajac are denied.

This action arises out of the treatment the plaintiff's decedent received for depression and his suicide as a result of his depression. The decedent sought outpatient treatment for depression at the defendant Catholic Charities of the Diocese of Rockville Centre-Freeport Clinic (hereinafter the Clinic) in December 2009, and the defendant Kathryn Zajac, a licensed social worker, was assigned as his therapist. In August 2010, the decedent expressed "vague suicidal ideation more frequently." In response, Zajac consulted with a nurse practitioner, and the frequency of the decedent's therapy sessions was increased.

During his therapy session on October 12, 2010, the decedent expressed suicidal ideation, and when asked if he had a plan, he stated that he would hang or shoot himself. Zajac asked the defendant Kamil Jaghab, a psychiatrist employed by the Clinic, to evaluate the decedent to confirm that there was now a serious threat of suicide. Jaghab determined that there was a high risk of suicide and told Zajac to refer the decedent to a hospital.

Zajac testified at her deposition that she called 911 because "[t]he standard of care is to call 911 and have [the decedent] brought to a hospital to be evaluated." Two police officers responded to transport the decedent to the hospital. Zajac gave the officers copies of the decedent's face sheet from his chart and his medication log, and Jaghab gave the officers a prescription sheet that stated: "Pt verbalized suicidal thought & intent to hang himself or shoot himself. Please evaluate (Pt is not known to writer)."

No one from the Clinic, including Zajac and Jaghab, called the hospital to alert them that the Clinic was sending the decedent for evaluation because of his risk for suicide. Jaghab testified at his deposition that "the ones who . . . follow up are the social workers. Because psychiatrists have so many loads of patients, usually, the supervisor and the social workers are the ones who call the hospitals and alert them." However, at her deposition, Zajac testified that she did not call the hospital because she assumed that "everyone felt" that the documentation provided was sufficient.

The decedent was transported to the defendant Nassau University Medical Center (hereinafter the hospital) and examined in the emergency room by the defendant Mukesh Prakash Sharoha, a psychiatrist. Sharoha testified at his deposition that he did not receive any paperwork from the Clinic and never saw Jaghab's prescription. The decedent did not tell Sharoha that he had specific plans for suicide. Sharoha testified that if he had been advised that the decedent had a plan to commit suicide, he would have evaluated the decedent differently. Since the decedent expressed no active plan to commit suicide, Sharoha discharged him from the hospital.

At her deposition, Zajac testified that following up on the decedent's case was "under [her] scope of care." However, when she followed up on October 16, 2010, which was her next scheduled day of work, the decedent had already committed suicide on October 15, 2010.

The plaintiff, as the executor of the decedent's estate, commenced this action against, among others, Zajac and the Clinic. Zajac and the Clinic moved for summary judgment dismissing

the amended complaint insofar as asserted against them, relying, inter alia, upon deposition testimony elicited during discovery and the affidavit of Juhi Malhotra, a licensed clinical social worker. Malhotra opined that Zajac did not depart from good and accepted social worker practices, that there was no standard that required Zajac to inform the hospital "that the police and ambulance were transporting a patient to the hospital," and that the failure to do so could not be a proximate cause of injury since the decedent received an independent psychiatric evaluation at the hospital. Malhotra further stated that Zajac did not depart from the standard of care in failing to follow up with the hospital the day after the decedent was taken there, and that if Zajac or the Clinic had followed up the next day, they would have, at most, been advised that the decedent had been evaluated and discharged, which would not trigger a requirement to take any specific action. Zajac and the Clinic also submitted an affidavit from Zajac, who stated that it was not the Clinic's "protocol" to contact a hospital to advise them that a patient was being transported there, nor was there any standard of practice requiring a social worker or the Clinic to contact the hospital to advise them that a patient was being transported there, as it is up to the hospital to make an independent evaluation of the patient.

In the order appealed from, the Supreme Court, inter alia, granted those branches of the motion which were for summary judgment dismissing the amended complaint insofar as asserted against Zajac and so much of the amended complaint as alleged that the Clinic was vicariously liable for the acts or omissions of Zajac. We reverse the order insofar as appealed from.

To prevail on a motion for summary judgment in a malpractice action, the defendant must make a prima facie showing either that there was no departure from accepted practice, or that any departure was not a proximate cause of the patient's injuries (see *Matos v Khan*, 119 AD3d 909, 910 [2014]). Here, the deposition testimony submitted by Zajac and the Clinic presented conflicting opinions as to Zajac's obligations. Despite Zajac's claim that she owed no duty to telephone the hospital or follow up with respect to the decedent's case, Jaghab testified at his deposition that the social workers at the Clinic are "the ones" who telephone a hospital to alert the hospital that a patient is being referred. Since there was no direct communication between the Clinic and the hospital, the fact that the decedent had a plan to commit suicide was not ascertained when Sharoha evaluated him and discharged him from the

hospital, at least in part because the decedent expressed no plan to commit suicide. The submissions of Zajac and the Clinic failed to eliminate all triable issues of fact as to their liability (*see Faicco v Golub*, 91 AD3d 817, 818 [2012]). In light of this determination, it is unnecessary to review the sufficiency of the plaintiffs' opposition papers (*see Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]; *Faicco v Golub*, 91 AD3d at 818).

Accordingly, the Supreme Court should have denied those branches of the motion which were for summary judgment dismissing the amended complaint insofar as asserted against Zajac and so much of the amended complaint as alleged that the Clinic was vicariously liable for the acts or omissions of Zajac. Chambers, J.P., Dickerson, Hinds-Radix and Connolly, JJ., concur.