*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  February 23, 2017                 523137
_____

CATA TKACHEFF et al.,
    Individually and as
    Administrators of the
    Estate of ANGELA T.
    SQUADERE, Deceased,
                        Appellants,        MEMORANDUM AND ORDER

        v

APRIL L. ROBERTS et al.,
                        Respondents.
_____


Calendar Date:  January 12, 2017

Before:  Peters, P.J., Egan Jr., Rose, Devine and Aarons, JJ.

_____


        Lemire, Johnson & Higgins, LLC, Malta (Timothy J. Higgins
of counsel), for appellants.

        Stewart Bernstiel Rebar Smith, New York City (Cathleen
Kelly Rebar of counsel), for April L. Roberts, respondent.

        Law Office of Hanlon & Veloce, Latham (Christine Hanlon of
counsel), for Susan Decker, respondent.

        Thuillez, Ford, Gold, Butler & Monroe, LLP, Albany (Daisy
Ford Paglia of counsel), for Saratoga Hospital, respondent.

_____


Devine, J.

        Appeal from an order of the Supreme Court (R. Sise, J.),
entered December 17, 2015 in Schenectady County, which granted
defendants' motions for summary judgment dismissing the
complaint.

Angela T. Squadere (hereinafter decedent) complained of anxiety and depression in late July 2011, the end result of which was her admission to an inpatient treatment facility where she remained until August 1, 2011. Decedent moved in with her sister upon her discharge and, on August 16, 2011, was admitted to defendant Saratoga Hospital (hereinafter the hospital) due to major depression with suicidial ideation. She was discharged by one of the attending physicians, defendant April L. Roberts, on August 22, 2011. Roberts instructed decedent to return to the hospital if her depression worsened and, if it did not, to take two prescription medications and follow up with an outpatient provider. The outpatient provider was defendant Susan Decker, a psychiatric nurse practitioner. Decedent met Decker on August 26, 2011, at which time decedent promised to send Decker information regarding an inpatient facility to which she might seek admission. Decedent died by her own hand days later.

Plaintiffs are decedent's parents and they commenced this action, individually and as administrators of her estate, asserting claims that included ones for medical malpractice and wrongful death.[1] Following joinder of issue and discovery, defendants separately moved for summary judgment dismissing the complaint. Supreme Court granted the motions, and plaintiffs now appeal.

We reverse. "To meet the initial burden on a summary judgment motion in a medical malpractice action, defendants must present factual proof, generally consisting of affidavits, deposition testimony and medical records, to rebut the claim of malpractice by establishing that they complied with the accepted standard of care or did not cause any injury to the patient" (Cole v Champlain Val. Physicians' Hosp. Med. Ctr., 116 AD3d 1283, 1285 [2014] [citation omitted]; see Rivera v Albany Med. Ctr. Hosp., 119 AD3d 1135, 1137 [2014]). Of particular relevance in this case, which involves the vagaries of psychiatric diagnosis and treatment, is the rule that "[l]iability may not be imposed 'for honest errors in medical judgment' but 'can and

---

[1]  Plaintiffs discontinued the action against all defendants except the hospital, Decker and Roberts.

should ensue if that judgment was not based upon intelligent reasoning or upon adequate examination so that there has been a failure to exercise any professional judgment'" (O'Sullivan v Presbyterian Hosp. in City of N.Y. at Columbia Presbyt. Med. Ctr., 217 AD2d 98, 103 [1995], quoting Snow v State of New York, 98 AD2d 442, 447 [1983], affd for reasons stated below 64 NY2d 745 [1984]; see Ballek v Aldana-Bernier, 100 AD3d 811, 813-814 [2012]; Winters v New York City Health & Hosps. Corp., 223 AD2d 405, 405 [1996]).

Decker and Roberts met that burden with factually specific expert opinions, offered in affidavits from a psychiatrist and nurse practitioner on behalf of Decker and the affirmation of a psychiatrist on behalf of Roberts, that neither provider departed from the accepted standard of care in their treatment of decedent.[2]  It follows that the hospital, to the extent that its liability was premised upon Roberts' conduct, met its initial burden.[3]  Plaintiffs' claims against the hospital also implicated the conduct of other providers, however, and the hospital provided no proof with regard to those providers.  As such, the hospital did not meet its initial burden insofar as the claims against it related to the conduct of hospital employees or contractors other than Roberts (see Pullman v Silverman, 28 NY3d 1060, 1062-1063 [2016]; Randall v Kingston Hosp., 135 AD3d 1100, 1103 [2016]).  The burden accordingly

_____

[2]  Roberts also suggested that any failure on her part was not the proximate cause of decedent's suicide, but that suggestion is based upon conclusory assertions of her expert psychiatrist that did not satisfy her initial burden of proof on the question (see Ballek v Aldana-Bernier, 100 AD3d at 813-814).

[3]  The hospital's motion for summary judgment was untimely, but was founded upon the proof and arguments set forth by Roberts in her timely and then-pending motion.  The hospital accordingly sought nearly indistinguishable relief to that requested in Roberts' motion, and its motion was properly considered (see Reutzel v Hunter Yes, Inc., 135 AD3d 1123, 1124 [2016]; Homeland Ins. Co. of N.Y. v National Grange Mut. Ins. Co., 84 AD3d 737, 738-739 [2011]).

shifted to plaintiffs to show the existence of material questions of fact as to whether the actions of Roberts and Decker departed from the accepted standard of care and, considering the record in a light most favorable to plaintiffs as the nonmoving parties (see Cole v Champlain Val. Physicians' Hosp. Med. Ctr., 116 AD3d at 1286-1287), we find that they have done so.

Dealing first with Roberts, she authored a discharge summary reflecting that decedent's discharge of August 22, 2011 had been deferred from three days earlier because of the lack of available outpatient treatment. Decedent had previously expressed suicidal thoughts and, after learning of the delay, stabbed herself with three separate objects in what she claimed was an effort to sever her femoral artery. There is some question as to whether decedent truly harbored suicidal intent in that incident but, in any case, she demanded discharge three days later, denying that she had any present suicidal ideation and claiming that "the hospital setting was contributing to her depression and her irritability." Roberts stated at her deposition that she conducted a suicide risk assessment and documented the results of that assessment in the discharge summary. The discharge summary did not state that the assessment had occurred or detail its findings, however, and set forth a care plan that amounted to little beyond directing that decedent take her medication and present herself to an outpatient care provider over a week later on September 1, 2011. Plaintiffs submitted the factually specific affidavit of a psychiatrist who, relying upon the foregoing, opined that Roberts deviated from the minimum standard of care in failing to document a proper suicide risk assessment and then discharging decedent without ensuring that she obtain psychotherapy and medication management within two days (compare Howard v Stanger, 122 AD3d 1121, 1125 [2014], lv dismissed 24 NY3d 1210 [2015], with Paradies v Benedictine Hosp., 77 AD2d 757, 759 [1980], lvs dismissed 51 NY2d 710, 1006, 1010 [1980]). Plaintiffs therefore demonstrated material questions of fact as to the liability of Roberts and, in turn, the hospital that precluded an award of summary judgment to them (see Gallen v County of Rockland, 137 AD3d 969, 970-971 [2016]; Thomas v Reddy, 86 AD3d 602, 604 [2011]).

Turning to Decker, decedent successfully lobbied to have her appointment moved up to August 26, 2011 from September 1, 2011. Decker conducted a psychiatric assessment of decedent at that time, finding her to be sad and anxious. Decker denied during her deposition that decedent was suicidal, but her written assessment stated that suicidal ideation was "present" and that decedent had planned to overdose in the past and was still cutting herself. Decker went on to diagnose decedent with severe major depressive disorder — depression that was untreated inasmuch as decedent's prescribed antidepressant had been discontinued at the hospital — and noted that decedent's suicidal thoughts increased in tandem with her diagnosed panic disorder. Decker nevertheless set forth a plan that placed further psychotherapy and medication review on hold until decedent decided whether to check herself into an inpatient treatment facility and provided more information about the facility to Decker. Plaintiffs' expert psychiatrist opined that Decker fell short of the minimum standard of care by failing to properly conduct and document a suicide risk assessment of decedent, who was experiencing triggering anxiety and untreated depression. The psychiatrist further opined that Decker departed from the minimum standard of care in placing medication adjustment and psychotherapy on hold in the expectation that a "severely compromised" person would provide more information on an inpatient treatment facility that she was curious about. In light of the psychiatrist's detailed opinion that Decker set forth a contingent treatment plan that "was itself a deviation from accepted medical standards" so as to deny decedent "the level of care acceptable within the relevant professional community," questions of fact also exist as to the liability of Decker that defeat her motion for summary judgment (Bernard v Block, 176 AD2d 843, 846 [1991]; see Gallen v County of Rockland, 137 AD3d at 970-971). Thus, defendants' motions for summary judgment should have been denied in their entirety.

Peters, P.J., Egan Jr., Rose and Aarons, JJ., concur.

ORDERED that the order is reversed, on the law, with costs, and motions denied.


ENTER:

Robert D. Mayberger
Clerk of the Court