■ TIMOTHY W. GALLAGHER et al., Individually and as Administrators of the Estate of JACK O'BANNON GALLAGHER, Deceased, Appellants, v CAYUGA MEDICAL CENTER et al., Respondents. [57 NYS3d 544]—

Peters, P.J. Appeal from an order of the Supreme Court (Rumsey, J.), entered June 27, 2016 in Tompkins County, which granted defendants' motions for summary judgment dismissing the complaint.

This action arises out of the tragic suicide of Jack O'Bannon Gallagher (hereinafter decedent), a 17-year-old high school student, on February 6, 2012. Defendant Auguste L. Duplan, a child adolescent psychiatrist employed by defendant Cayuga Medical Center (hereinafter CMC), first treated decedent in July 2011. At that time, decedent was admitted to CMC

complaining of "extreme mood swings, self-injury, cuts and burns to [his] arms [and] suicidal ideation." Decedent reported to Duplan that he had made a suicide attempt a month prior to his admission by an Albuterol overdose. Diagnosed with "substance induced mood disorder," decedent was treated and discharged five days later and prescribed an antidepressant.

On February 6, 2012, at approximately 1:00 p.m., decedent was transported by ambulance from his high school to CMC's emergency room after a school nurse had indicated that decedent was hyper and then lethargic, had elevated blood pressure and may have abused a substance. Plaintiffs, decedent's parents, arrived shortly thereafter. Defendant Christopher R. Scianna, the attending emergency room physician, attended to decedent until his shift ended and he subsequently "signed out" decedent at 4:00 p.m. to defendant Drew Koch, another emergency room physician employed by defendant Cayuga Emergency Physicians LLP. Scianna ordered a drug screen and a mental health evaluation of decedent, and the drug screen tested positive for the presence of barbiturates. The mental health evaluation was performed by Meghan Beeby, a registered nurse from CMC's behavioral health unit, in consultation with Duplan, the on-duty psychiatrist.

Ultimately, using the information obtained from the mental health evaluation, collateral sources and other medical records, but without personally meeting with decedent, Duplan concluded that decedent was safe to be discharged from CMC's emergency department to return to his home with his parents. Beeby reviewed the evaluation and recommendation with Koch, who discharged decedent from CMC at 7:04 p.m. with a diagnosis of "substance abuse." Decedent's father signed the discharge instructions, which indicated that decedent should call 911 or return to the emergency room if he felt suicidal or homicidal, and instructed that it was essential that decedent follow up with substance abuse treatment recommendations. A short time after arriving home, decedent committed suicide by shooting himself in the head.

Plaintiffs commenced this action against defendants asserting causes of action for medical malpractice, negligence, wrongful death and emotional distress. The gravamen of the complaint is that the decision to discharge decedent from CMC on February 6, 2012 was not grounded upon a proper mental health evaluation. Following joinder of issue and discovery, all defendants moved for summary judgment dismissing the

complaint. Supreme Court granted the motions, and plaintiffs appeal.[1]

"In a medical malpractice action, the plaintiff must show that the defendant 'deviated from acceptable medical practice, and that such deviation was a proximate cause of the plaintiff's injury' " (*Mazella v Beals*, 27 NY3d 694, 705 [2016], quoting *James v Wormuth*, 21 NY3d 540, 545 [2013]). It is well settled that a physician "may not be held liable for a mere error in professional judgment" (*Ballek v Aldana-Bernier*, 100 AD3d 811, 813 [2012] [internal quotation marks and citation omitted]; *see Nestorowich v Ricotta*, 97 NY2d 393, 398-399 [2002]; *Paradies v Benedictine Hosp.*, 77 AD2d 757, 759 [1980], *lvs dismissed* 51 NY2d 710, 1006, 1010 [1980]). This rule is particularly relevant to cases involving mental health treatment, given that psychiatry is not an exact science and, therefore, decisions related to mental health treatment and discharge often involve a measure of calculated risk (*see Schrempf v State of New York*, 66 NY2d 289, 295-296 [1985]; *Taig v State of New York*, 19 AD2d 182, 183 [1963]). Thus, " 'for a psychiatrist to be held liable for malpractice based upon a decision made in connection with a patient's treatment or a decision to discharge a patient from a hospital, it must be shown that the treatment decisions represented something less than a professional medical determination . . . or that the psychiatrist's decisions were not the product of a careful evaluation' " (*Ballek v Aldana-Bernier*, 100 AD3d at 813, quoting *Ozugowski v City of New York*, 90 AD3d 875, 876 [2011]; *see Schrempf v State of New York*, 66 NY2d at 295-296; *Tkacheff v Roberts*, 147 AD3d 1271, 1272 [2017]; *Park v Kovachevich*, 116 AD3d 182, 190-191 [2014], *lv denied* 23 NY3d 906 [2014]).

Defendants, as the proponents of the respective summary judgment motions, "bore the initial burden of establishing that they did not depart from acceptable standards of care or that any such departure did not cause the injury" (*Longtemps v Oliva*, 110 AD3d 1316, 1317 [2013]; *see Johnson v Nassau Univ. Med. Ctr.*, 140 AD3d 704, 706 [2016]). In support of their respective motions, Duplan and CMC submitted, among other things, the deposition testimony of Duplan and Beeby, decedent's medical records and the sworn expert opinions of

---

1. Plaintiffs' brief raises no issue with respect to Supreme Court's dismissal of their second cause of action for ordinary negligence or to the dismissal of the complaint as against Scianna. We therefore deem any challenges in those regards to be abandoned (*see Helfer v Chapin*, 96 AD3d 1270, 1271 n [2012]; *Enright v Eli Lilly & Co.*, 155 AD3d 64, 67 n 1 [1990], *affd* 77 NY2d 377 [1991], *cert denied* 502 US 868 [1991]).

psychiatrists Peter Martin and Ralph Carotenuto. The medical records and deposition testimony indicated that, before decedent was discharged, Duplan considered the 2011 medical record of decedent's prior admission under his care in CMC's adolescent psychiatry unit and required Beeby to contact and solicit the opinion of Lauren Franklin, the outpatient therapist with whom decedent was then treating. Duplan also reviewed and considered the mental health evaluation conducted by Beeby, which included interviews with decedent and plaintiffs, reviewed and assessed the contemporaneous 2012 medical record and considered the circumstances leading to decedent's arrival at CMC.

Notably, the records relied on by Beeby and Duplan indicated that, at the time the school nurse evaluated decedent, she did not note any concerns regarding suicidal ideation. Moreover, upon arriving at CMC by ambulance, decedent was seen by the triage nurse, and stated that he had no thoughts of harming himself. In her mental health evaluation, Beeby asked decedent a number of questions geared toward assessing his risk for suicide. In response, decedent stated that he was not suicidal, did not currently feel that suicide was the only way to end his emotional pain and did not believe that others may have been better off if he were not around. Beeby was aware that decedent's responses differed from his July 2011 admission, when he voluntarily presented for help with suicidal ideation and described his prior suicide attempts by overdosing on medications. In evaluating decedent, Beeby observed his body language in order to match his responses to his physical appearance and demeanor, noting that he made good eye contact with her when he explained that he was not suicidal and did not slouch or slump.

Beeby also questioned decedent concerning the self-inflicted cuts on his right arm, in response to which decedent stated that he cut himself for psychosexual stimulation, not because of suicidal ideation. Beeby noted that decedent's cuts were shallow and superficial, rather than so deep as to necessitate an admission, and that no sutures were required for treatment. Both Beeby and Duplan opined that decedent lied and was being manipulative when he denied taking drugs prior to being brought to CMC, and concluded that, although decedent lied about drug use, he was not suicidal.

Duplan also relied on Beeby's conversation with Franklin, who had conducted over 20 therapy sessions with decedent, the last of which took place five days prior to Beeby's evaluation. Franklin indicated to Beeby that, while she was concerned

about decedent's drug abuse, she did not think that he required inpatient treatment inasmuch as he did not express any suicidal thoughts to her and had denied having any suicidal feelings for weeks. Beeby had also spoken to plaintiffs, who resided with decedent. Plaintiffs expressed no concern that decedent was at risk of harming himself or that he was suicidal or depressed, and believed that it was safe to discharge decedent. Beeby also asked plaintiffs whether there was anything in the home that decedent could use to harm himself, and decedent's father noted that he was only concerned about medications and stated that he would secure any drugs in the home.

In his affirmation in support of the motions by Duplan and CMC, Martin opined that it was consistent with the accepted standard of care to have Beeby, a registered nurse with experience in psychiatric evaluation, perform the face-to-face evaluation of decedent in consultation with Duplan and concluded that decedent's evaluation, which included an hour-long personal interview with decedent in accordance with a standard questionnaire, along with speaking to his parents and counselor, was also in accordance with the standard of care. Martin further opined that Duplan acted within the standard of care in relying on Beeby's evaluation, along with his review of the records for decedent's 2011 admission and the emergency department records from the day in question, without personally meeting with decedent or speaking to the collateral contacts. Carotenuto, in his affidavit, rendered similar opinions to those proffered by Martin and also indicated that a psychiatric patient's prior suicide attempt, drug use and self-inflicted wounds are not uncommon and that many such patients do not commit suicide. Based on their review of the relevant materials, both Martin and Carotenuto concluded that the February 6, 2012 discharge of decedent was a reasonable medical judgment supported by a thorough psychiatric evaluation consistent with the accepted standard of care. By submitting the foregoing evidence, Duplan and CMC met their initial burden on the motions (see Tkacheff v Roberts, 147 AD3d at 1272-1273; Ballek v Aldana-Bernier, 100 AD3d at 814).

Koch submitted, among other things, his own affidavit, in which he averred that Beeby, at his request, summarized her evaluation of decedent and Duplan's determination, including the findings, the discharge plan, any issues related to decedent's safety and the recommended follow-up care. Koch opined that he reasonably relied on Beeby's and Duplan's evaluation and assessment of decedent in deciding to authorize decedent's discharge. This affidavit was sufficient to meet Koch's initial

burden of demonstrating that he did not deviate from the accepted standard of care by relying on the recommendation of the mental health evaluator and the attending psychiatrist in signing decedent's discharge form (*see Cole v Champlain Val. Physicians' Hosp. Med. Ctr.*, 116 AD3d 1283, 1285 [2014]). Further, given that Cayuga Emergency Physicians' liability is premised on vicarious liability related to Koch's treatment of decedent, the evidence showing that he acted in accordance with the appropriate standard of care also satisfied Cauyga Emergency Physicians' burden (*see Tkacheff v Roberts*, 147 AD3d at 1273; *Cole v Champlain Val. Physicians' Hosp. Med. Ctr.*, 116 AD3d at 1286).

The burden, therefore, shifted to plaintiffs to raise a triable issue of fact as to whether defendants departed from the accepted standard of care (*see Tkacheff v Roberts*, 147 AD3d at 1273; *Ballek v Aldana-Bernier*, 100 AD3d at 814). To that end, plaintiffs primarily relied on an affirmation of Igor Galynker, a psychiatrist, who opined that Duplan departed from accepted practice in several ways, including by failing to personally evaluate decedent and failing to consider several factors that increased decedent's risk for suicide. As to CMC, Galynker opined that it failed to establish procedures requiring Duplan to personally evaluate decedent and failed to create a "structured interview algorithm" for assessment of acute suicide risk, leading to serious errors on Beeby's part. Yet, Galynker failed to provide any factual basis for his opinions[2] or point to any medical guidelines indicating that only a psychiatrist may conduct a mental health examination. Furthermore, Galynker's assertion that Duplan had failed to consider several additional suicide risk factors is belied by Duplan's testimony and the mental health evaluation, which reveal that Duplan was aware of and weighed such factors. Relatedly, Galynker never articulated how or why, if certain questions were asked or mnemonics/algorithms were used, material information would have been revealed that would have altered the medical decision rendered. Consequently, with regard to Duplan and CMC, Supreme Court properly found Galynker's affirmation to be conclusory and lacking sufficient detail to raise a triable issue of fact (*see Stephen v City of New York*, 137 AD3d 1003, 1005-1006 [2016]; *Park v Kovachevich*, 116 AD3d at 192; *Eckman v*

---

**2.** Notably, Galynker's various opinions, such as that Beeby and Duplan failed to consider decedent's prior suicide attempt, cutting or substance abuse and relied solely on decedent's statements, as well as that Beeby and Duplan failed to appreciate decedent's "deteriorating" relationship with his girlfriend, not only lack factual support but are outright refuted by the record.

*Cipolla*, 77 AD3d 704, 705 [2010]; *Grzelecki v Sipperly*, 2 AD3d 939, 941 [2003]). With respect to Koch, Galynker opined that he deviated from accepted practice by, among other things, failing to discuss the case with Duplan and failing to consider the effects of decedent's drug use. Notably, however, Galynker did not indicate that he had any training or expertise in the field of emergency medicine (*see Behar v Coren*, 21 AD3d 1045, 1046-1047 [2005], *lv denied* 6 NY3d 705 [2006]). Therefore, plaintiffs' medical malpractice and wrongful death causes of action were properly dismissed.

Plaintiffs' final cause of action, for negligent infliction of emotional distress, was also properly dismissed inasmuch as defendants did not owe plaintiffs an independent duty in discharging decedent to their care (*see McNulty v City of New York*, 100 NY2d 227, 232-234 [2003]; *Cohen v Cabrini Med. Ctr.*, 94 NY2d 639, 642-644 [2000]; *Shaw v QC-Medi N.Y., Inc.*, 10 AD3d 120, 124-125 [2004]; *Landon v New York Hosp.*, 101 AD2d 489, 495-496 [1984], *affd* 65 NY2d 639 [1985]; *but see Davis v South Nassau Communities Hosp.*, 26 NY3d 563, 579-580 [2015]).

While we are sympathetic to plaintiffs' tragic loss, the fact remains that they failed to raise a triable issue of fact on any of the subject causes of action with respect to these defendants. Accordingly, Supreme Court properly dismissed the complaint in its entirety.

Garry, Devine, Mulvey and Aarons, JJ., concur. Ordered that the order is affirmed, with costs.