Doe v Langer (2022 NY Slip Op 03957)

Doe v Langer

2022 NY Slip Op 03957

Decided on June 16, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 16, 2022

533326
[*1]Jane Doe, Respondent,
v
Bharat B. Langer et al., Defendants, and Sharon H. Zuckerman et al., Appellants.

Calendar Date:April 25, 2022

Before:Garry, P.J., Aarons, Pritzker, Reynolds Fitzgerald and Fisher, JJ.

Burke, Scolamiero & Hurd, LLP, Albany (Steven V. DeBraccio of counsel), for appellants.
LaFave, Wein & Frament, PLLC, Albany (Jason A. Frament of counsel), for respondent.

Reynolds Fitzgerald, J.
Appeal from an order of the Supreme Court (O'Connor, J.), entered April 23, 2021 in Albany County, which denied certain defendants' motion for summary judgment dismissing the complaint.
On January 9, 2016, plaintiff was kidnapped at knifepoint, raped, and sexually assaulted by Jose L. Marlett at his apartment. At the time of the rape and sexual assault, Marlett was an outpatient client of defendant Rehabilitation Support Services, Inc. (hereinafter RSS), a nonprofit corporation providing rehabilitation and recovery-oriented services to individuals who have mental illness and substance abuse issues. The recovery-oriented services program consists of an outpatient clinic with social workers and a psychiatrist who provide counseling in either a group setting or one-on-one, and routine sessions with a psychiatrist or nurse practitioner to discuss medications. RSS also provides a supportive residential apartment program to its clients as part of their personal recovery-oriented services and supplied an apartment for Marlett to lease. The supportive apartment program assists clients in living independently. Staff assist clients — anywhere from once a week to once a day — with daily living skills including cooking, shopping and banking. Plaintiff commenced two actions [FN1] against RSS and its program director, licensed master social workers, licensed clinical social workers, and licensed mental health counselors (hereinafter collectively referred to as defendants), and various other medical professionals and institutions who treated Marlett. Following joinder of issue and discovery, defendants moved for summary judgment dismissing the complaint against them. Supreme Court denied the motion. Defendants appeal.
Defendants contend that they had no duty to control and supervise Marlett and did not have the requisite special relationship with Marlett to prevent him from causing harm to plaintiff, therefore defendants cannot be liable for negligence and negligent supervision. "It is well established that before . . . defendant[s] may be held liable for negligence it must be shown that the defendant[s] owe[] a duty to the plaintiff. In the absence of duty, there is no breach and without a breach there is no liability" (Pulka v Edelman, 40 NY2d 781, 782 [1976] [citations omitted]; see He v Apple, Inc., 189 AD3d 1984, 1986 [2020]). "The question of whether a member or group of society owes a duty of care to reasonably avoid injury to another is
. . . a question of law for the courts (Purdy v Public Adm'r of County of Westchester, 72 NY2d 1, 8 [1988]). "In general, a defendant has no duty to control the conduct of a person to prevent him [or her] from causing harm to others . . . [unless] a special relationship . . . exist[s] between the defendant and a third person such that the defendant is required to control the third person to protect others" (Rivera v New York City Health & Hosps. Corp., 191 F Supp 2d 412, 417 [SD NY 2002] [citations omitted]; [*2]see Purdy v Public Adm'r of County of Westchester, 72 NY2d at 8). Moreover, it is settled law that, "in certain limited circumstances, a mental health provider may be liable for failing to control or commit a voluntary outpatient who later harms a member of the public" (Rivera v New York City Health & Hosps. Corp., 191 F Supp 2d at 419; see Schrempf v State of New York, 66 NY2d 289, 296 [1985]).
In support of defendants' motion, RSS submitted the affidavit of its managing director at the time plaintiff was raped and sexually assaulted. The director averred that Marlett could not be compelled to attend counseling or to take his medication. He further averred that RSS could not mandate Marlett be involuntarily hospitalized but could issue a "'pick-up' order" to have the police pick up Marlett because of his behavior. As to the apartment, the residency agreement contains provisions that are typical of a residential lease, as well as a two-step discharge process to be implemented in the event the resident violated the terms and conditions of the program. The director further alleged that staff could not forcibly restrain or restrict Marlett's movements within the community.
Initially, we reject defendants' contention that, as Marlett was a voluntary outpatient of RSS's program, defendants de facto owed no duty to plaintiff, and instead look to the facts and circumstances of this particular case to discern whether in fact said duty existed (see Fox v Marshall, 88 AD3d 131, 136 [2011]; Rivera v New York City Health & Hosps. Corp., 191 F Supp 2d at 422).
In this regard, it is undisputed, and the record confirms, that Marlett had been an outpatient client at RSS for approximately one year and had been a resident in its apartment program for approximately one to three months prior to his receipt of personal recovery services. Marlett's application for RSS services included his diagnoses of bipolar disorder and schizoaffective disorder, and a history of delusions, hallucinations, paranoia, suicidal and homicidal ideations and incarceration. RSS identified Marlett's risks as suicide and violence, and noted that he had a history of physical altercations, threatening and attempting to harm others and was a danger to himself and others. In order to receive RSS services, Marlett was required to forego other psychiatric and mental health treatment and RSS essentially became the exclusive provider of Marlett's medication management, clinical counseling, therapy and psychiatric assessments.[FN2]
RSS's psychiatric reports for June 2015 conveyed Marlett's depression, mania, mood irritability and increasing anger outbursts. The September to October 2015 reports noted that Marlett was struggling with class attendance, having conflict with peers, and struggling with increased stress, paranoia and other symptoms. The October to December 2015 reports set forth Marlett's frequent absences from meetings. A December 2015 report discloses that a knife had to be [*3]confiscated from Marlett, that he was unable to sit still, that his former paramour was a stressor and trigger for him, and that he was not doing well, did not remain psychiatrically stable and had been flagged with mobile crisis. Based upon Marlett's behaviors, in December 2015 RSS issued a 30-day notice to discharge Marlett from all services, citing his use of alcohol in violation of residency rules, which posed a threat to his and others' health, safety and well-being. RSS was aware that on January 5, 2016, Marlett was intoxicated and harassed his former girlfriend, necessitating police involvement. On that same day, shortly after strongly encouraging Marlett to stop drinking, RSS staff members observed him purchasing alcohol from a nearby store, which they did not address. On January 7, 2016, RSS staff checked on Marlett and observed alcohol in his apartment. That afternoon, staff issued a pick-up order for Marlett, citing his minimal engagement in treatment, significant paranoia and agitation, excessive alcohol intake, suicidal ideation, as well as masturbating while on the phone with RSS staff. Marlett was evaluated at Albany Medical Center, transferred to Capital District Psychiatric Center and discharged on January 8, 2016. Later that afternoon, RSS staff contacted Marlett to discuss his postdischarge treatment from Capital District Psychiatric Center and realized that he was once again intoxicated, watching pornography and masturbating while speaking with staff. RSS staff scheduled a meeting with Marlett three days in the future. The next day he raped and sexually assaulted plaintiff.
In determining whether defendants owed plaintiff, a member of the general public, a duty of care in circumstances such as those before us, we are cognizant that "no bright-line rule exists" (Rivera v New York City Health & Hosps. Corp., 191 F Supp 2d at 419). Rather, courts have examined the issue on a case-by-case basis,[FN3] and look to whether or not defendants have sufficient authority and ability to control Marlett's conduct, so as to exhibit a special relationship with him such that a duty exists (see id.). Here, defendants were Marlett's sole mental health care providers and had knowledge of his previous criminal record, his mental health diagnosis and that he posed a violent threat to himself and others. Defendants were fully aware of Marlett's rapid decompensation and unstable behavior and were in the best position to control and attempt to stop him from harming himself and others (see Davis v South Nassau Communities Hosp., 26 NY3d 563, 576 [2015]; Padula v County of Tompkins, 303 AD2d 804, 805 [2003]; Rivera v New York City Health & Hosps. Corp., 191 F Supp 2d at 422-423). Under these facts, we find that defendants failed to prove a lack of duty to take reasonable steps to prevent Marlett from harming members of the general public. Therefore, Supreme Court properly denied defendants' summary judgment motion on their negligence and negligent [*4]supervision causes of action.
Defendants next contend that plaintiff cannot establish a cause of action for medical malpractice as doctors typically only owe a duty of care to their own patients and no special relationship exists to extend that duty to plaintiff. "A psychiatrist or mental health practitioner has the same general duty to exercise 'professional judgment' and treat patients using a 'proper medical foundation.' In the case of mental health practitioners, however, in certain circumstances this duty is owed not only to patients and the narrow category of individuals the physician could expect to be affected by the treatment, but to the outside public as well" (Rivera v New York City Health & Hosps. Corp., 191 F Supp 2d at 418 [citations omitted]). "[F]or a psychiatrist to be held liable for malpractice based upon a decision made in connection with a patient's treatment . . ., it must be shown that the treatment decisions represented something less than a professional medical determination . . . or that the psychiatrist's decisions were not the product of a careful evaluation" (Gallagher v Cayuga Med. Ctr., 151 AD3d 1349, 1351 [2017] [internal quotation marks and citations omitted]; see Thomas v Reddy, 86 AD3d 602, 603-604 [2011]). "To meet the initial burden on a summary judgment motion in a medical malpractice action, defendants must present factual proof, generally consisting of affidavits, deposition testimony and medical records, to rebut the claim of malpractice by establishing that they complied with the accepted standard of care or did not cause any injury to the patient" (Tkacheff v Roberts, 147 AD3d 1271, 1272 [2017] [internal quotation marks and citations omitted]; accord Marshall v Rosenberg, 196 AD3d 817, 818 [2021]).
RSS's director averred that RSS has no authority to involuntary hospitalize its clients; that, at the most, it could have its clients evaluated to be admitted to a hospital, which RSS did with Marlett — two days before he raped and sexually assaulted plaintiff. We find that defendants did not meet their initial burden of establishing their right to summary judgment on her medical malpractice cause of action. Defendants failed to submit a competent expert medical opinion, instead submitting a speculative and conclusory affidavit by its nonphysician director that failed to provide any factual basis showing that they complied with professional standards, why a pick-up order was not issued under virtually the same circumstances as two days earlier, and why follow-up care was not scheduled immediately, but, instead, for three days in the future (see Humphrey v Riley, 163 AD3d 1313, 1315 [2018]; Longtemps v Oliva, 110 AD3d 1316, 1319 [2013]). Therefore, Supreme Court properly denied defendants' motion for summary judgment dismissing the medical malpractice cause of action against them (see Davis v South Nassau Communities Hosp., 26 NY3d at 581; Padula v County of Tompkins, 303 AD2d at 806).
Defendants initially [*5]contend that issues related to the emotional distress claims are unpreserved for appellate review because plaintiff did not oppose that portion of the summary judgment motion. Notwithstanding plaintiff's failure to specifically oppose this aspect of the motion, Supreme Court considered and determined that plaintiff's negligent emotional distress claim should not be dismissed. As no further facts are required to evaluate the sufficiency of defendants' motion, we will consider this matter on the merits (see Arthur Brundage Inc. v Morris, 174 AD3d 1088, 1089 [2019]; Allen v Matthews, 266 AD2d 782, 784-785 [1999]).
Defendants assert that Supreme Court should have dismissed plaintiff's cause of action for negligent infliction of emotional distress due to her failure to allege extreme and outrageous conduct. We disagree. "A cause of action for negligent infliction of emotional distress generally requires the plaintiff to show a breach of a duty owed to him or her which unreasonably endangered his or her physical safety, or caused him or her to fear for his or her own safety" (A.M.P. v Benjamin, 201 AD3d 50, 57 [2021] [internal quotation marks, brackets and citations omitted]; see Kenneth S. v Berkshire Farm Ctr. & Servs. for Youth, 36 AD3d 1092, 1094 [2007]). "Unlike intentional infliction of emotional distress, however, the Court of Appeals has not stated that extreme and outrageous conduct is an essential element of a cause of action to recover damages for negligent infliction of emotional distress" (Taggart v Costabile, 131 AD3d 243, 253-254 [2015] [citations omitted]). Other courts have now clarified that "extreme and outrageous conduct is not an essential element of a cause of action to recover damages for negligent infliction of emotional distress[,] . . . consistent with the Court of Appeals' formulation of [that] cause of action" (id. at 255; see Stephanie L. v House of the Good Shepherd, 186 AD3d 1009, 1014 [2020]; Tigano v United States, 527 F Supp 3d 232, 249 [ED NY 2021]). We also hold that extreme and outrageous conduct is not an essential element of a cause of action to recover damages for negligent infliction of emotional distress. As such, Supreme Court properly denied the part of defendants' motion seeking summary judgment on the cause of action for negligent infliction of emotional distress.
Defendants lastly contend that plaintiff's allegations that they violated various statutes do not create a private right of action and Supreme Court erred in denying their motion to that extent. "A violation of a statute may constitute negligence per se or it may give rise to absolute liability" (Van Gaasbeck v Webatuck Cent. School Dist. No. 1, 21 NY2d 239, 243 [1967] [citation omitted]). Where an action is based on negligence, a violation of a statute or ordinance may constitute evidence of negligence if proximate cause is proven, along with other relevant proven facts which a jury may consider (see Homin v Cleveland & Whitehill Co., [*6]281 NY 484, 487 [1939]; Amberg v Kinley, 214 NY 531, 536 [1915]). An examination of plaintiff's complaint reveals a cause of action based on common-law negligence, however no cause of action for violation of a statute is pleaded. Nor are the allegations sufficient to construe a cause of action for violation of a statute (cf. Van Gaasbeck v Webatuck Cent. School Dist. No.1, 21 NY2d at 245-246). Accordingly, Supreme Court properly denied defendants' summary judgment motion.
Garry, P.J., Aarons, Pritzker and Fisher, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: The parties stipulated to consolidate the actions.

Footnote 2: We note that defendants argue that the document in question merely prohibited Marlett from receiving duplicate services and did not preclude him from receiving additional "nonduplicative" services. In that RSS provided Marlett with counseling, medication, and residential services, we are hard put to discern what other services he would seek.

Footnote 3: This particular type of analysis renders defendants' meticulous and voluminous exercise of distinguishing the facts of prior cases ineffective.