21-2971-cv
*Valdes v. Brooks*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of January, two thousand twenty-three.

PRESENT:
> DENNY CHIN,
> JOSEPH F. BIANCO,
> SARAH A. L. MERRIAM,
> *Circuit Judges*.

_____

Ricardo Valdes, individually, and as Administrator ad Prosequendum of Stuart Kloda, deceased,

> *Plaintiff-Appellant*,

v.                          21-2971-cv

Glen Z. Brooks, M.D., and NY Ketamine Infusions, LLC,

> *Defendants-Appellees*.

_____

FOR PLAINTIFF-APPELLANT:      JEFFREY S. KAUFMAN, Kaufman & Lynd, PLLC, Orlando, FL.

FOR DEFENDANTS-APPELLEES:      BARBARA D. GOLDBERG, Martin Clearwater & Bell LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Koeltl, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-appellant Ricardo Valdes appeals from the district court's grant of summary judgment to defendants-appellees Dr. Glen Z. Brooks and NY Ketamine Infusions, LLC ("Ketamine Infusions"). Valdes brought medical malpractice claims alleging that Dr. Brooks negligently treated Valdes's husband, Dr. Stuart Kloda, for depression, which resulted in Dr. Kloda dying by suicide. The district court determined that, on multiple independent grounds, Valdes failed to establish a *prima facie* medical malpractice claim. *Valdes v. Brooks*, No. 19-cv-617 (JGK), 2021 WL 4803699 (S.D.N.Y. Oct. 13, 2021). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, to which we refer only as necessary to explain our decision to affirm.

## BACKGROUND

Dr. Kloda had a long history of depression, including suicidal ideations. For many years, Dr. Kloda was treated by a psychiatrist, Dr. Gary Brendel, on a weekly basis. In 2016, Dr. Kloda began Ketamine treatments in New York City with Dr. Brooks in an attempt to alleviate his depression.[1] During their first meeting, Dr. Kloda expressly prohibited Dr. Brooks from contacting Dr. Brendel. Between July and October 2016, Dr. Kloda received nine rounds of Ketamine treatment.

On Monday, January 30, 2017, Dr. Kloda met with Dr. Brooks and received a Ketamine

---

[1] Dr. Kloda executed a waiver acknowledging that Ketamine is not a FDA-approved treatment for depression.

treatment. Valdes recalled that Dr. Kloda described the visit as an emergency. During the appointment, Dr. Kloda told Dr. Brooks that he had recently experienced suicidal ideations, starting on the Saturday morning prior, but they had since subsided. Dr. Kloda indicated that his feelings had become so intense on Saturday that he had considered transferring his own patients to other doctors, but he denied having weapons at home, and stated that he had not planned any specific method by which he might harm himself. Dr. Kloda indicated that the feelings "had beg[u]n to abate" on Sunday, and that "by Monday morning he was much better." App'x at 389. By the end of the session, Dr. Brooks was "convinced that Dr. Kloda was not in imminent danger of any self-harm." *Id.* Valdes spoke on the phone with Dr. Kloda that day and recalled that Dr. Kloda seemed normal.

Over the next two days, Valdes, who was away on a business trip, spoke with Dr. Kloda on the phone several times. On February 1, Dr. Kloda said he was not feeling well, but that he and Valdes "would talk about it when [Valdes] got home and not to worry." *Id.* at 138–39. Valdes called again around midnight, and they talked about a future vacation plan, among other things. When Valdes returned home in the evening on February 2, he found Dr. Kloda not breathing on the floor. It was subsequently determined that Dr. Kloda had died after affixing fentanyl patches to his body.

In 2019, Valdes brought medical malpractice and other related claims against Dr. Brooks and Ketamine Infusions. [2] Specifically, Valdes alleged medical malpractice based on Dr. Brooks's failure to: (1) communicate and coordinate treatment with Dr. Brendel; (2) develop a

---

[2] In the complaint, Valdes alleged negligence, failure to obtain informed consent, failure to report suicidal ideation, wrongful death, and loss of consortium. In the summary judgment briefing, Valdes explicitly abandoned the informed consent claim and separately explained that the failure to report claim was part of his negligence claim.

safety plan of action; and (3) report Dr. Kloda's suicidal ideations to the authorities. The district court granted summary judgment on each of these claims, concluding that Valdes had failed to offer an expert opinion, or other evidence, from which a rational jury could find that Dr. Brooks's conduct was the proximate cause of Dr. Kloda's suicide.

## DISCUSSION

"We review a district court's grant of summary judgment *de novo*, construing the evidence in the light most favorable to the party opposing summary judgment and drawing all reasonable inferences in [his] favor." *Guan v. City of New York*, 37 F.4th 797, 804 (2d Cir. 2022). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The parties agree that New York substantive law applies. In the medical malpractice context, a defendant is entitled to summary judgment under Rule 56 where undisputed facts show that the defendant "did not depart from acceptable standards of care or that any such departure did not cause the injury." *Gallagher v. Cayuga Med. Ctr.*, 57 N.Y.S.3d 544, 548 (3d Dep't 2017) (internal quotation marks and citation omitted). A plaintiff can defeat summary judgment by providing an expert opinion that "demonstrate[s] the requisite nexus between the malpractice allegedly committed and the harm suffered." *Park v. Kovachevich*, 982 N.Y.S.2d 75, 82 (1st Dep't 2014) (internal quotation marks and citation omitted). "Expert opinions, in order not to be considered speculative or conclusory, should address specific assertions made by the movant's experts, setting forth an explanation of the reasoning and relying on specifically cited evidence in the record." *Attia v. Klebanov*, 143 N.Y.S.3d 408, 410 (2d Dep't 2021) (internal quotation marks and citation omitted).

4

As set forth below, the district court correctly determined that summary judgment was warranted for Dr. Brooks and Ketamine Infusions because Valdes failed to put forward sufficient evidence, in the form of expert testimony or otherwise, to establish causation with respect to Dr. Brooks's alleged failure to consult with Dr. Brendel, develop a safety plan, or contact authorities.[3]

Valdes's expert, Dr. Mark W. Reitman, contended that, if there had been coordination of care between Dr. Brooks and Dr. Brendel, one of the doctors could have conducted "a well visit or a welfare check," which could have "made a . . . dent . . . in helping to avoid [Dr. Kloda's] acting upon [his] impulses," App'x at 578–79, and asserted that a safety plan "could have possibly changed the outcome," *id.* at 604. However, Dr. Reitman's testimony that such interventions could have prevented the suicide was speculative. *Cf. Morillo v. N.Y.C. Health & Hosps. Corp.*, 87 N.Y.S.3d 158, 159 (1st Dep't 2018) (finding that an expert's opinion that the decision to discharge psychiatric patient "led to [the patient's] death" was "speculative"); *see also Gallagher*, 57 N.Y.S.3d at 550 (finding a psychiatrist's expert opinion conclusory). Even Dr. Reitman

---

[3]  The district court also independently held, with respect to the alleged failure to communicate with Dr. Brendel, that there was no evidence to controvert Dr. Brooks's determination that there was no imminent threat of harm that would allow him, under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 29 U.S.C. § 1181 et *seq.*, and applicable regulations, to contact Dr. Brendel over Dr. Kloda's express objection. Thus, the district court concluded that the uncontroverted evidence established that the failure to communicate with Dr. Brendel was not a departure from the standard of care. In addition, as to the alleged failure to develop a safety plan, the district court determined that "a reasonable jury could not find that Dr. Brooks's treatment plan was so remiss that it constituted a failure to exercise medical judgment" given the uncontroverted evidence that the suicidal ideations had subsided by the time of the January 30 appointment. *Valdes,* 2021 WL 4803699, at *5. The district court also held that "a reasonable jury [could not] conclude that Dr. Brooks's examination was so thin that it constituted a departure from the standard of care" given that Valdes's expert conceded that the examination was adequate. *Id.* Finally, the district court held that "no reasonable jury could conclude that not contacting the authorities was a deviation from the standard of care," because Valdes's expert conceded, based upon Dr. Brooks's uncontroverted account of Dr. Kloda's statements on January 30, that contacting the authorities was unnecessary. *Id.* at *6. However, because we conclude that summary judgment was warranted on the causation element, we need not address these alternative grounds related to the standard of care.

5

himself conceded in his deposition that it was "unknowable" whether communication between the two doctors would have resulted in a "different outcome." App'x at 579–80. Dr. Reitman also acknowledged that it was "correct" that his opinion that consultation with Dr. Brendel could have avoided Dr. Kloda's suicide was speculative because Dr. Kloda "could have still acted upon his . . . expressed desire to kill himself" and added that "[w]e'll never know." App'x at 579. Similarly, Valdes's claim for failure to alert the authorities cannot survive summary judgment because he has not put forward any expert causation testimony on that issue nor does he argue, or is there any evidence to demonstrate, that this is a "rare" medical malpractice case "in which no expert medical testimony is required." *Sitts v. United States*, 811 F.2d 736, 740 (2d Cir. 1987) (internal quotation marks and citation omitted).

In sum, the district court correctly held that, even construing the evidence most favorably to Valdes, summary judgment was warranted because no rational jury could find that Valdes had satisfied the causation element with respect to Dr. Brooks's alleged negligent conduct.[4]

\* \* \*

We have considered Valdes's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[4] The district court also properly concluded that, because there was no liability against Dr. Brooks, summary judgment was also warranted on the claims brought against Ketamine Infusions under a *respondeat superior* theory.

6